UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOSEPHINE KIRKLAND-HUDSON,

                                        Plaintiff,

        v.

MOUNT VERNON CITY SCHOOL
DISTRICT, *et al*.,

                                        Defendants.

No. 21-CV-695 (KMK)

<u>OPINION & ORDER</u>

---

<u>Appearances</u>:

Bryan Glass, Esq.
Glass Harlow & Hogrogian LLP
New York, NY
*Counsel for Plaintiff*

Gerald S. Smith, Jr., Esq.
Deanna L. Collins, Esq.
Silverman and Associates
White Plains, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Josephine Kirkland-Hudson ("Plaintiff") brings this Action against the Mount Vernon

City School District/Board of Education ("District"), Felicia Gaon ("Gaon"), Susan Burnett

("Burnett"), Rachel DePaul ("DePaul"), Karalyne Sperling ("Sperling"), Marcie E. Tiggs

("Tiggs"), and Kenneth R. Hamilton ("Hamilton") (collectively, "Defendants"), alleging that

Defendants unlawfully maintained a hostile work environment, discriminated, and retaliated

against her on the basis of her race in violation of Title VII of the Civil Rights Act of 1964

("Title VII"), 42 U.S.C. § 1981, and the New York State Human Rights Law ("NYSHRL").  (*See

generally* Sec. Am. Compl. (Dkt. No. 59).)  Plaintiff additionally alleges Defendants unlawfully

maintained a hostile work environment, discriminated, and retaliated against her on the basis of her disability in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12132, et seq., and the NYSHRL and failed to reasonably accommodate her in violation of the ADA. (*See id.*)  Finally, Plaintiff brings claims of interference and retaliation against the District, Tiggs, and Hamilton in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, et seq.  (*See id.*)  Before the Court is Defendants' Motion To Dismiss (the "Motion") Plaintiff's Second Amended Complaint ("SAC").  (*See* Not. of Mot. (Dkt. No. 69).)  For the following reasons, Defendants' Motion is granted in part and denied in part.

## I.  Background

### A.  Factual Background

#### 1.  Parties

The District is a school district within the State of New York at which Plaintiff was employed.  (SAC ¶ 10–11.)

Plaintiff is a Black social worker employed with the District since 2005.  (*Id*. ¶¶ 18–19.) Since the 2017-2018 school year she has been assigned to both the Lincoln School ("Lincoln") and the Rebecca Turner Elementary School ("Rebecca Turner").  (*Id*. ¶ 9.)

Gaon was the former Director of Student Services until she resigned in June 2020.  (*Id*. ¶ 12.)  She was originally hired as the Director of Special Education in 2013.  (*Id*.)

DePaul was the Interim Director of Student Services from September 2021 until she resigned on December 31, 2021.  (*Id*. ¶ 13.)  She was originally hired as the Assistant Director of Special Education.  (*Id*.)

Burnett is Caucasian, was the former Special Education Supervisor, and was Plaintiff's direct supervisor at Rebecca Turner.  (*Id*. ¶¶ 14, 25.)  She was employed with the District from September 2018 until she resigned on July 21, 2020.  (*Id*.)

Sperling is Caucasian, was the former Special Education Supervisor, and was Plaintiff's direct supervisor at Lincoln.  (*Id*. ¶¶ 15, 25.)  She was employed with the District from October 2019 until she resigned on October 15, 2021.  (*Id*.)

Hamilton has been employed with the District as Superintendent of Schools since 2014, resigning from the District effective June 30, 2022.  (*Id*. ¶ 16.)

Tiggs was employed with the District as Assistant Superintendent of Human Resources. (*Id*. ¶ 17.)

### 2.  Incidents Giving Rise to this Action

#### a.  2015–2016 School Year

Beginning in the 2015-16 school year, Plaintiff and her fellow social workers began to notice a shift in the treatment of the District's Black social workers, through unbalanced schedule assignments and targeted disciplinary actions.  (*Id*. ¶ 22.)  In March 2016, Plaintiff drafted a letter on behalf of Mount Vernon City School District's social workers addressed to Gaon and Hamilton demanding equitable treatment, fair distribution of caseloads, and documenting the disproportionate number of disciplinary actions targeting Black social workers. (*Id*. ¶ 23.)  Plaintiff alleges the letter contributed to Gaon's probationary period being extended an additional year.  (*Id*.)  Though the letter was not signed, Plaintiff alleges Gaon discovered that Plaintiff drafted the letter.  (*Id*.)  Since drafting the 2016 letter, Plaintiff has been assigned an "unbalanced counseling schedule" despite her objections.  (*Id*.)

### b.  2018–2019 School Year

In the 2018–2019 school year, Plaintiff was assigned to service students with mandatory counseling plans at two schools—Rebecca Turner for two days and Lincoln for three days.  (*Id*. ¶ 25.)  Plaintiff needed to service 26 students at Rebecca Turner and 13 students at Lincoln.  (*Id*. ¶ 26.)  Plaintiff alleges she knew that she could not provide all the sessions needed at Rebecca Turner if she was only spending two days per week there.  (*Id*.)

During the 2018–2019 school year, a union meeting was held where Plaintiff discovered that only Black social workers were assigned unbalanced schedules which had a negative impact on the educational needs of students with disabilities.  (*Id*. ¶ 27.)  At the end of the meeting, DePaul told Plaintiff that Gaon purposefully assigned her an unbalanced schedule because of Plaintiff's 2016 letter which delayed Gaon's tenure by a year.  (*Id*.)

During a faculty meeting at Rebecca Turner in 2018, Burnett commented that a Black Special Education child with autism would wind up at Rikers Island.  (*Id*. ¶ 28.)

### c.  2019–2020 School Year

For the 2019–20 school year, the number of Plaintiff's students on her caseload increased to 57 students between Lincoln (2.5 days and 13 students) and Rebecca Turner (44 students and 2.5 days).  (*Id*. ¶ 30.)

Plaintiff experienced increased hostility during her interactions with Gaon and administrative staff, the majority of whom were non-Black.  (*Id*. ¶ 31.)  For example, Plaintiff was scrutinized for minor infractions that were regularly excused when committed by her Caucasian colleagues, such as being reprimanded for being a few minutes late to a meeting, while similarly situated Caucasian colleagues who showed up later than Plaintiff were not reprimanded.  (*Id*.)  Defendants would also cancel scheduled union meetings interfering with

Plaintiff's union leadership duties to advocate on behalf of the members she represented.  (*Id*.)
Defendants ultimately decided to not have these meetings at all.  (*Id*.)  Plaintiff has been the
"subject of two disciplinary actions involving fabricated performance issues and enforcing
unrealistic work expectations only against Plaintiff's work."  (*Id*.)

Plaintiff filed a Level 1 grievance against Gaon and Burnett on September 23, 2019,
regarding violations of the Mount Vernon Federation of Teachers Collective Bargaining
Agreement regarding her schedule, working conditions, the student services committee, and the
labor-management relations committee which was resolved by way of agreement reached on
October 10, 2019.  (*Id*. ¶ 32.)

On October 8, 2019, Plaintiff filed a formal internal complaint of race discrimination and
harassment with the District's Human Resources Department against Gaon which was
unanswered by the District.  (*Id*. ¶ 33.)  In retaliation for filing the complaint, Gaon "interfered
with attempts to stop Plaintiff from going to [a] union meeting" she had permission to attend,
embarrassing her in front of nearly 50 clinicians and supervisors.  (*Id*. ¶ 34.)

Plaintiff's September 23, 2019, grievance was denied shortly after she filed her complaint
with the Human Resources Department.  (*Id*. ¶ 35.)  On October 17, 2019 Gaon sent Plaintiff an
email rescinding the grievance agreement reached on October 10, 2019 and rescinding a previous
scheduling agreement.  (*Id*.)  On October 20, 2019, Plaintiff sent Gaon an email asking her what
"terms were not met," to which she never responded.  (*Id*. ¶ 36.)  Plaintiff filed a Level 2
grievance on October 25, 2019, and a meeting was held on November 1, 2019, with the then
Assistant Superintendent for Human Resources, Denise Gagne-Kurpiewski, and Jeanne Casino,
the union grievance chairperson.  (*Id*.)  On November 7, 2019, Plaintiff's second grievance was
denied without explanation.  (*Id*.)

On January 29, 2020, Plaintiff filed a follow-up letter regarding her race discrimination internal complaint with the Human Resources Department, which was not answered.  (*Id*. ¶ 38.)

On May 6, 2020, when the District was working remotely due to COVID–19, Gaon and Burnett requested to have a remote meeting with Plaintiff to discuss her professional responsibilities and suggested she bring a union representative.  (*Id*. ¶ 39.)  The meeting was held on May 12, 2020; that same day Plaintiff received "a threatening disciplinary letter of counsel for 'not completing a schedule'" from Bennett that was copied to Gaon and DePaul.  (*Id*.)  The next day during a Zoom staff meeting, Sperling informed attendees that they would need to submit their remote schedules because of "one or two bad apples."  (*Id*. ¶ 40.)

Plaintiff applied to work in the extended school year program for the summer of 2020 on June 8, 2020 which she had worked at the previous two summers.  (*Id*. ¶ 41.)  On July 7, 2020 Plaintiff found out she was not selected for summer work and accordingly could not earn additional income and seniority with respect to the summer program.  (*Id*.)  Plaintiff inquired as to why she was not hired on July 12, 2020, to which DePaul responded that there was less work available.  (*Id*.)  Plaintiff later learned that "work was in fact available."  (*Id*.)

### d.  2020–2021 School Year

On September 16, 2020, Gaon "retaliated" against Plaintiff by issuing her a letter of counsel for Plaintiff having logged off a Zoom meeting that was being recorded without Plaintiff's consent on September 10, 2020.  (*Id*. ¶ 42.)  On February 4, 2021, Gaon falsely accused Plaintiff of failing to submit clinical verification sheets.  (*Id*. ¶ 44.)

On February 11, 2021, after experiencing panic attacks and symptoms of depression due to the ongoing treatment in her work environment, Plaintiff applied for FMLA leave for 12 weeks beginning on March 1, 2021, to address her mental and physical health needs.  (*Id*. ¶ 45.)

6

Plaintiff's FMLA application stated that she was "currently diagnosed with Post Traumatic Stress Disorder, Major Depressive Disorder, and Generalized Anxiety Disorder." (*Id*.) On February 24, 2021, Hamilton and Tiggs sent Plaintiff a letter directing her to an Education Law § 913 medical examination on March 11, 2021, and Plaintiff was informed that she could use sick time if she was unable to report to work. (*Id*.)

Plaintiff was on sick leave from March 8, 2021 to May 31, 2021. (*Id*. ¶ 46.) On March 25, 2021, the District denied Plaintiff's FMLA leave, however on April 4, 2021, Plaintiff was informed she was approved for FMLA leave. (*Id*. ¶¶ 47–48.) Plaintiff asked the District to reinstate her FMLA leave balance since she already had been home for weeks using her personal sick days, which it refused to do. (*Id*. ¶ 48.)

While Plaintiff was on sick leave, she "was subjected to continued harassment and retaliation by the [] Defendants." (*Id*. ¶ 49.) Plaintiff instructed Defendants to use the postal service to contact her should they need to contact her during her sick leave, however Defendants "sent employees to Plaintiff's home repeatedly to deliver correspondence and spy on her." (*Id*.) Defendants ignored Plaintiff's repeated requests to keep off her property and continued to send employees to her home. (*Id*.) On May 14, 2021, Plaintiff filed a police report alleging "District's Defendants were constantly bothering her by coming onto her property, knocking on her door, leaving letters in her mailbox, driving up and down the street in front of her home, [and] pacing up and down her driveway." (*Id*. ¶ 50.) A copy of the report was emailed to Hamilton and Tiggs. (*Id*. ¶ 51.)

On June 1, 2021, the day Plaintiff returned to her social worker position from sick leave, she received an email from DePaul directing her to report in-person to Lincoln. (*Id*. ¶ 52.) Plaintiff informed DePaul that she had been approved for ADA accommodations to work in-

person from Rebecca Turner and provide remote learning to Lincoln students, however, DePaul did not respond to Plaintiff.  (*Id.*)  That day, DePaul also notified Plaintiff about her work assignment for the upcoming school year which was an "unbalanced schedule caseload."  (*Id.*)  After Plaintiff's repeated attempts to resolve the issue with DePaul, Plaintiff filed a Level 1 union grievance on June 18, 2021.  (*Id.*)  Plaintiff ultimately received an email from DePaul with an agreement reached regarding her assignment in September 2021.  (*Id.*)

### e.  2021–2022 School Year

On September 10, 2021, DePaul held a Clinician Zoom Meeting in which Plaintiff was forced to be video recorded despite her objection.  (*Id.* ¶ 53.)  During this meeting, DePaul informed the clinicians that they would be required to make up services from the prior year, which Plaintiff alleges violated their collective bargaining agreement.  (*Id.*)  On September 27, 2021, Plaintiff filed a grievance against DePaul alleging a hostile work environment and inequitable treatment, and objecting to being video recorded.  (*Id.* ¶ 54.)  At the Level 1 grievance meeting, DePaul verbally provided Plaintiff with options to avoid being video recorded.  (*Id.*)  DePaul denied the grievance in writing on October 21, 2021.  (*Id.*)  Plaintiff filed a Level 2 grievance on November 1, 2021 to Hamilton and Tiggs which was denied by Tiggs on November 9, 2021.  (*Id.*)

On October 27, 2021, Plaintiff applied for an internal posting for social workers to provide counseling outside of school hours.  (*Id.* ¶ 55.)  DePaul ignored Plaintiff's emails regarding the posting.  (*Id.*)  Plaintiff filed a Level 1 grievance against DePaul regarding the rate of pay and description of the posting which was denied on November 9, 2021.  (*Id.*)  Plaintiff filed a Level 2 grievance to Hamilton and Tiggs on November 18, 2021 which was denied by Tiggs on December 2, 2021.  (*Id.*)

8

On approximately November 4, 2021, Plaintiff learned that DePaul held a staff Zoom meeting for Rebecca Turner staff on October 1, 2021 to discuss a due process complaint. (*Id.* ¶ 56.) Plaintiff believes she was intentionally excluded from this meeting since she was present at work on this day and was the only person not at this meeting. (*Id.*) Plaintiff had reached out to DePaul in previous emails to inform her she was not included on important department emails, but the situation was not resolved. (*Id.*)

On December 7, 2021, the Board of Education held a meeting and publicly shared an agenda item regarding a memorandum which stated that Plaintiff applied for a per session posting and then falsely accused Plaintiff along with two other colleagues of declining to provide services to students. (*Id.* ¶ 57.) The agenda item was submitted by Hamilton; Plaintiff believes Hamilton and DePaul authored it in retaliation against her. (*Id.*) The next day, Plaintiff emailed DePaul pertaining to the December 7, 2021 memorandum, however DePaul did not respond. (*Id.*)

On December 20, 2021, Plaintiff filed an internal claim of harassment, retaliation, and intimidation against Hamilton and DePaul. (*Id.* ¶ 58.) That same day at a Board of Education meeting, one of the Board trustees read a joint public statement on behalf of Hamilton and the board in response to "a claim" by an individual. (*Id.* ¶ 59.)

On January 18, 2022, Plaintiff submitted a request for ADA accommodations regarding her workspace at Lincoln and provided several accommodation options. (*Id.* ¶ 60.) That request was denied at the direction of Tiggs. (*Id.* ¶ 61.) On January 31, 2022, Plaintiff sent an email to Tiggs and two others stating her physician had required her to work from a single location due to "health conditions" and that she was also experiencing a high level of anxiety and not sleeping. (*Id.* ¶ 62.)

That same day, while working at Lincoln, Plaintiff had to leave early "due to illness, shortness of breath, anxiety, and panic attacks." (*Id*. ¶ 63.) She went to urgent care and was diagnosed with bronchitis. (*Id*.) Plaintiff has since been diagnosed with asthma. (*Id*.)

On February 1, 2022, Hamilton proposed a board agenda item that included the memorandum with the allegedly false information about Plaintiff. (*Id*. ¶ 64.) Plaintiff believes "she is being blacklisted" from future employment opportunities. (*Id*.) On February 4, 2022, Plaintiff filed a complaint with the New York State Department of Labor Public Employee Safety and Health Bureau alleging the District did not have appropriate face coverings or PPE. (*Id*. ¶ 65.) The same day, Plaintiff also requested another FMLA leave, which was denied "at the direction of" Tiggs. (*Id*. ¶¶ 66, 69.)

### f. EEOC Filing

Plaintiff's EEOC charge is dated June 2, 2020. (Compl. 12–15.) Plaintiff filed the instant action on January 25, 2021, after receiving a right to sue letter from the EEOC on approximately October 28, 2020. (SAC ¶ 43.) Plaintiff alleged that "[s]ince 2016," white social workers received "accommodating" "assignments/workloads" while similarly situated social workers of color were given higher workloads and were split between schools. (Compl. 12.) Plaintiff alleged that, in retaliation for filing internal complaints about her assignment and caseload and the harassment she experienced, she was prevented from attending a union meeting on October 16, 2019 and that an agreement regarding her schedule and workload was "reversed and denied." (*Id*. at 13.) Plaintiff also alleged she was issued a false letter of counsel on May 12, 2020. (*Id*.)

B.  Procedural History

Plaintiff filed her original Complaint on January 26, 2021.  (Dkt. No. 1.)  Plaintiff filed

her Amended Complaint on March 30, 2021.  (Dkt. No. 4.)  Plaintiff filed her Second Amended

Complaint on May 20, 2022.  (Dkt. No. 59.)  Defendants filed the instant Motion and an

accompanying Memorandum of Law on August 19, 2022.  (*See* Not. of Mot. (Dkt. No. 69);

Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. No. 70).)  Plaintiff filed her Opposition on

September 9, 2022.  (*See* Mem. of Law in Opposition to Mot. to Dismiss ("Pl.'s Mem.") (Dkt.

No. 74).)  Defendants filed a Reply on September 23, 2022.  (*See* Reply Mem. in Further Supp.

of Mot. ("Defs.' Reply Mem.") (Dkt. No. 78).)

## II.  Discussion

A.  Standard of Review

The Supreme Court has held that while a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S.  544, 555 (2007)

(alteration and quotation marks omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure

"demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions

devoid of further factual enhancement."  *Id.*  (alteration and quotation marks omitted).   Rather, a

complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative

level."  *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of

facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege

"only enough facts to state a claim to relief that is plausible on its face," *id.* at 570.  However, if a plaintiff has not "nudged [his] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed."  *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will .  .  .  be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" (second alteration in original) (citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)).  Additionally, as noted, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken."  *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).

B.  EEOC Exhaustion

"Exhaustion of administrative remedies through the EEOC is an essential element of the Title VII . . . statutory scheme[] and, as such, a precondition to bringing such claims in federal court." *Legnani v. Alitalia Linee Aeree Italiane*, *S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (quotation marks and citation omitted).  The same is true for ADA claims.  *Lester v. Mount Pleasant Cottage Sch. Union Free Sch. Dist.*, No. 19-CV-5247, 2020 WL 3618969, at *5 (S.D.N.Y. July 2, 2020) ("As a condition precedent to bringing a claim under the ADA, a plaintiff must show that she exhausted her administrative remedies.") (quotation marks and citation omitted).

1.  Reasonably Related

The Second Circuit has recognized that "claims . . . not asserted before the EEOC may be pursued in a subsequent federal court action if they are 'reasonably related' to those that were filed with the agency."  *Shah v. N.Y. State Dep't of Civil Serv.*, 168 F.3d 610, 614 (2d Cir. 1999).  Conduct is reasonably related to conduct in an EEOC charge if: "[1] the claim would fall within the reasonably expected scope of an EEOC investigation of the charges of discrimination; [2] it alleges retaliation for filing the EEOC charge; or [3] the plaintiff alleges further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge."  *Alfano v. Costello*, 294 F.3d 365, 381 (2d Cir. 2002) (alterations in original) (citation and quotation marks omitted).  The first category "is essentially an allowance of loose pleading[,] and is based on the recognition that EEOC charges frequently are filled out by employees without the benefit of counsel and that their primary purpose is to alert the EEOC to the discrimination that a plaintiff claims [s]he is suffering."  *Deravin v. Kerik*, 335 F.3d 195, 201 (2d Cir. 2003) (citation, alteration, and quotation marks omitted).  The Second Circuit has advised that the focus of the

inquiry "should be on the factual allegations made in the EEOC charge itself" and whether they "gave that agency adequate notice to investigate" the claims subsequently asserted in federal court. *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 70 (2d Cir. 2006) (alteration and internal quotation marks omitted).

"Defendants bear the burden of proving a failure to exhaust[.]" *Kane v. St. Raymond's Roman Catholic Church*, No. 14-CV-7028, 2015 WL 4270757, at *5 (S.D.N.Y. July 13, 2015). Courts therefore generally deny motions to dismiss for failure to exhaust unless the failure "is clear from the face of the complaint[.]" *Arnold v. Rsch. Found. for State Univ. of N.Y.*, 216 F. Supp. 3d 275, 287 (E.D.N.Y. 2016). However, on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court may consider EEOC filings because "they are public documents" and are "integral to Plaintiff's claims." *Morris v. David Lerner Assocs.*, 680 F. Supp. 2d 430, 436 (E.D.N.Y. 2010); *see also Kouakou v. Fideliscare N.Y.*, 920 F. Supp. 2d 391, 394 n.1 (S.D.N.Y. 2012) ("Because the EEOC [c]harge is part of an administrative proceeding, the [c]ourt may take judicial notice of it without converting [the] [d]efendant's motion into a motion for summary judgment."); *McLeod v. Lowe's Home Improvement*, Nos. 09-CV-834, 09-CV-835, 2010 WL 4366901, at *2 n.2 (N.D.N.Y. Oct. 28, 2010) ("On [a] Fed. R. Civ. P. 12(b)(6) motion, the [c]ourt may properly consider the EEOC charges and right-to-sue notices because they are public documents in administrative proceedings and are integral to [the] plaintiff's claims.").

Defendants contend that Plaintiff's EEOC charge does not address "numerous other claims" in the Second Amended Complaint which are "wholly distinct from and unrelated" to the events described in the EEOC charge "and are therefore administratively unexhausted" including:

14

(1) any reprimands Plaintiff received for being late to meetings during the 2019-2020 school year; (2) Plaintiff's failure to be hired for the 2020 summer school program; (3) the September 16, 2020 disciplinary letter of counsel; (4) Gaon's allegations regarding Plaintiff's failure to submit verification sheets on February 4, 2021; (5) any denial of Plaintiff's requests for FMLA leave; (6) the failure to reinstate any days after Plaintiff was belatedly approved for FMLA leave; (7) allegations regarding employees "harassing" Plaintiff at her home by hand delivering correspondence and "spying" on her; (8) DePaul directing Plaintiff to an in-person meeting in June 2021; (9) DePaul "forcing" Plaintiff to be recorded on Zoom in 2020 and 2021; (10) DePaul requiring Plaintiff and others to provide make-up sessions in 2021 arising from the previous school year; (11) the failure to hire Plaintiff for the per-session social worker position in 2021; (12) the exclusion from meetings and emails by DePaul; (13) the denial of Plaintiff's 2022 ADA request; and (14) Hamilton's correspondence to the Board in December 2021 and February 2022.

(Defs.' Mem. 8.)

"The exhaustion requirement applies not only to causes of action but also to underlying factual allegations." *Fanelli v. N.Y.*, 51 F. Supp. 3d 219, 227 (E.D.N.Y. 2014) (citing *Deravin*, 335 F.3d at 201); *McGuire v. U.S. Postal Serv.*, 749 F.Supp. 1275, 1287 (S.D.N.Y. 1990) (noting that the exhaustion requirement applies to "acts of discrimination")). While Plaintiff points to *Kleinman v. Fashion Inst. of Tech.*, No. 16-CV-4348, 2017 WL 3016940, (S.D.N.Y. July 14, 2017), which noted that "the 'reasonably related' analysis usually focuses on whether a plaintiff has administratively exhausted claims, not allegations underlying those claims," underlying factual allegations that differ from those in an EEOC charge are routinely analyzed separately for exhaustion purposes in the Second Circuit. *Id*. at *6; *see*, *e.g.*, *Haner v. Cnty. of Niagara, N.Y.*, No. 19-CV-754, 2021 WL 230874, at *3 (W.D.N.Y. Jan. 22, 2021) (determining whether later denials of promotions on the basis of gender were related to the promotion denial on the basis of gender alleged in the EEOC charge); *Santos v. Engelhard Corp.*, No. 05-CV-203, 2009 WL 2432736, at *7 (S.D.N.Y. Aug. 6, 2009) (determining whether allegations that plaintiff was passed over for the purchasing storeroom supervisor position because of discriminatory animus

was reasonably related to lost promotions alleged in plaintiff's EEOC charge because of the same discriminatory animus).  Indeed, the Court in *Kleinman* acknowledged that courts in this District have analyzed whether specific factual allegations were reasonably related to exhausted claims in determining whether plaintiffs have sufficiently exhausted.  2017 WL 3016940, at *7 (citing *Flum v. Dep't of Educ. of the City of N.Y.*, 83 F. Supp. 3d 494, 499–500 (S.D.N.Y. 2015) (concluding that teacher's discrimination claims arising out of her employment at a particular school were not "reasonably related" to the claims plaintiff raised in her EEOC charge regarding events at a different school before she was transferred)).  Indeed, if plaintiffs needed to only exhaust claims rather than factual allegations, the Second Circuit's "precisely the same manner" exception would be superfluous, as presumably any discriminatory act carried out in "precisely the same manner" as the exhausted claims would already be subsumed within that claim, and therefore would require no exception.

The Court first addresses whether Plaintiff exhausted her ADA claim and then determines whether the specific factual allegations Defendants challenge on exhaustion grounds were indeed exhausted.[1]

----

[1] Defendants do not specifically argue that Plaintiff has failed to exhaust her hostile work environment claim.  In any event, this Court determines that Plaintiff exhausted her hostile work environment claim.  A hostile work environment exists "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Harris*, 510 U.S. at 21 (quotations and citations omitted).  To give the EEOC adequate notice of a hostile work environment claim, the EEOC charge must reference "repeated conduct or the cumulative effect of individual acts" directed toward the plaintiff.  *Morris*, 680 F. Supp. 2d at 437 (quoting *Mathirampuzha v. Potter*, 548 F.3d 70, 77 (2d Cir. 2008) (holding hostile work environment claim not reasonably related to discrimination claim filed with the EEOC because plaintiff's "EEO complaint recount[ed] nothing more than a single act of physical and verbal abuse" and therefore contained "no reference to repeated conduct or the cumulative effect of individual acts")).  Because Plaintiff's EEOC charge alleges repeated conduct through a specific pattern of discrimination lasting for multiple years, the filing of a formal complaint regarding harassment, and retaliation in the form of public humiliation and false accusations, Plaintiff has exhausted her

a.  ADA Claim

The Court agrees that Plaintiff did not include any allegations regarding disability or lack of accommodations in her EEOC.  (*See generally* Compl. 12–15.)  Plaintiff seems to argue that the ADA claim is reasonably related because Plaintiff developed PTSD, anxiety, and depression and requested FMLA leave as a result of the conduct alleged in the EEOC charge.  (Pl.'s Mem. 6.)  However, as Defendants rightfully note, the case Plaintiff relies upon does not support this position.  (Defs.' Reply Mem. 2.)  Indeed, in *Murray v. Brooklyn Public Library*, No. 96-CV-2786, 1997 WL 1048899, at *3 (E.D.N.Y. June 13, 1997) (citation omitted), the court held the plaintiff's ADA claim was reasonably related to claims alleged in his EEOC charge because, even though the plaintiff did not specifically allege a disability discrimination claim, he did allege that "his termination immediately followed a period of medical leave."  The court held that the plaintiff's allegation regarding his medical leave was sufficient for a disability discrimination claim to have fallen within the scope of the EEOC's investigation.  *Id.*  Here, in contrast, Plaintiff's EEOC charge did not mention any disability or health issue.

Furthermore, "[c]ourts in the Second Circuit have generally held that claims alleging discrimination based upon a protected classification which are different than the protected

---

hostile work environment claim.  *See Pilgrim v. McGraw–Hill Cos., Inc.*, 599 F. Supp. 2d 462, 491 (S.D.N.Y. 2009) (holding hostile work environment claim reasonably related to EEOC charge because charge referred to "systemic" discrimination and alleged that supervisor "demean[ed]" plaintiff with "foul and offensive" language); *cf. Lester*, 2020 WL 3618969, at *6 (holding plaintiff barred from bringing hostile work environment claim where he "offered no factual allegations in his NYSDHR Complaint to suggest that harassment based on his disability was occurring," and "made no mention of any demeaning comment or gesture at all, much less repeated conduct" (quotation marks and citation omitted)); *Fleming v. Verizon N.Y., Inc.*, 419 F. Supp. 2d 455, 464 (S.D.N.Y. 2005) (holding hostile work environment claim not reasonably related to EEOC charge because EEOC charge only made general allegations regarding employer's disparate treatment of men and women).

classification asserted in administrative filings are not reasonably related." *Shands v. Lakeland Cent. Sch. Dist.*, No. 15-CV-4260, 2017 WL 1194699, at *4 (S.D.N.Y. Mar. 30, 2017) (citation and quotation marks omitted).  Indeed, courts have consistently found that claims of race discrimination are not reasonably related to claims of disability discrimination.  *See, e.g., Espinoza v. Port Auth. of NY & NJ*, No. 19-CV-258, 2022 WL 623809, at *6 (S.D.N.Y. Mar. 2, 2022) ("[C]ourts in this Circuit have typically found that Title VII claims are not reasonably related to ADA claims.") (quotation marks and citation omitted); *O'Quinn v. City of N.Y.*, No. 19-CV-9663, 2021 WL 4429787, at *6 (S.D.N.Y. Sept. 27, 2021) ("Because Plaintiff did not raise the disability discrimination he alleges to have suffered in his EEOC Charge—and because that discrimination could not reasonably have been expected to fall within the scope of the EEOC investigation growing out of the charge of race discrimination that was made—Plaintiff's ADA claims are unexhausted and must be dismissed.") (alterations, quotation marks, and citation omitted); *De Lorenzo v. King Kullen Grocery Co.*, No. 19-CV-3460, 2020 WL 7047314, at *9 (E.D.N.Y. Aug. 12, 2020), *report and recommendation adopted sub nom. De Lorenzo v. King Cullen Grocery Co. Inc.*, No. 19-CV-3460, 2020 WL 7042835 (E.D.N.Y. Nov. 30, 2020) ("Plaintiff's complete failure to mention any disability leaves the Court with no reason to believe that when the EEOC was investigating Plaintiff's claim of [discrimination and retaliation], it would have included disability discrimination within the scope of its review."); *Pinkard v. N.Y.C. Dep't of Educ.*, No. 11-CV-5540, 2012 WL 1592520, at *8 (S.D.N.Y. May 2, 2012) ("Courts have consistently held that discrimination claims based on age, sex, or disability are not reasonably related to claims based on race or color, and vice versa." (italics omitted)); *James v. Fed. Rsrv. Bank of N.Y.*, No. 01-CV-1106, 2005 WL 1889859, at *5 (E.D.N.Y. Aug. 8, 2005)

(holding that plaintiff's race discrimination claim was not "reasonably related" to the disability, age and gender discrimination charges she raised before the EEOC).

However, Plaintiff also argues that her "ADA disability . . . claim[] stem[s] from recent retaliatory events after the filing of the original federal complaint, where the District refused to accommodate her requests for reasonable accommodations." (Pl.'s Mem 6.) The Second Circuit has held that the second "reasonably related" exception "applies with equal force to retaliation for filing a federal lawsuit as it does for filing an administrative charge." *Soules v. Conn., Dep't of Emergency Servs. & Pub. Prot.*, 882 F.3d 52, 57 (2d Cir. 2018). However, nowhere in the Second Amended Complaint has Plaintiff alleged that the denials of accommodation were in retaliation for her filing the instant federal lawsuit. Thus, the second exception cannot apply based on this argument. *Barkley v. City of N.Y.*, No. 12-CV-2159, 2014 WL 25270, at *13 (E.D.N.Y. Jan. 2, 2014) ("Because plaintiffs did not sufficiently allege retaliation for filing an EEOC charge, the second exception is also inapplicable.") (citing *Alfano*, 294 F.3d at 382 (holding plaintiff's "vague, conclusory accusations of 'retaliatory conduct' . . . insufficient to meet the . . . requirement of a specific linkage between filing an EEOC charge and an act of retaliation"); *Daigle v. West*, 225 F. Supp. 2d 236, 242 n.13 (N.D.N.Y. 2002) ("For [the second] exception to apply . . . the plaintiff must allege specific linkage between the filing of an EEO charge and the acts of retaliation about which he complains.")).

### b.  Individual Factual Allegations

#### i.  Reasonable Scope of the Investigation Exception

"The first, and most expansive, test for reasonable relation considers whether the alleged discriminatory conduct would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Junior v. Erie Cnty. Med.*

*Ctr. Corp.*, No. 18-CV-1014, 2021 WL 8946164, at *3 (W.D.N.Y. Dec. 28, 2021) (quotation marks and citation omitted), *report and recommendation adopted*, No. 18-CV-1014, 2022 WL 2306959 (W.D.N.Y. June 27, 2022).

The September 16, 2020 "unfair" disciplinary letter of counsel and the alleged racially disparate reprimands are within the scope of the EEOC charge because the charge alleges Plaintiff was issued a false letter of counsel on May 12, 2020, which would have put the EEOC on notice to investigate disciplinary issues. *See Rommage v. MTA Long Island Rail Rd.*, No. 08-CV-836, 2010 WL 4038754, at *7 (E.D.N.Y. Sept. 30, 2010) *aff'd*, 452 Fed. App'x 70 (2d Cir. 2012) (holding that allegations that the plaintiff was unjustly disciplined and allegations that she was unjustly terminated were reasonably related because both were allegations of unfounded discipline). However, Plaintiff's failure to be hired for the 2020 summer school program is not reasonably related to the allegations in the EEOC charge, as the charge involves an entirely different type of work assignment than that described in the EEOC charge. *See Junior v. Erie Cnty. Med. Ctr. Corp.*, No. 18-CV-1014, 2021 WL 8946164, at *4 (W.D.N.Y. Dec. 28, 2021), *report and recommendation adopted*, No. 18-CV-1014, 2022 WL 2306959 (W.D.N.Y. June 27, 2022) (holding that discriminatory treatment with regards to "milieu" assignments was not reasonably related to discriminatory treatment with respect to "floating" assignments).

### ii.  Precisely the Same Manner Exception

The instances of alleged discrimination that occurred after the EEOC investigation concluded on October 28, 2020 cannot have fallen within the scope of the EEOC investigation and therefore must fit within another exception. *See Green v. N.Y.C. Transit Auth.*, No. 15-CV-8204, 2020 WL 5632743, *7 (S.D.N.Y. 2020) ("Plaintiff's discrimination claims that occurred after the close of the EEOC investigation . . . fall outside the scope of the EEOC investigation

20

and would not be exhausted unless they alleged conduct that [falls under the remaining two exceptions].").

While an "incident that is precisely the same as one included in an EEOC charge but which takes place subsequent to the filing of the EEOC charge might not fall within the scope of the EEOC investigation arising from the charge, since it might occur after the investigation was completed" the "values associated with exhaustion are not entirely lost because the EEOC would have had the opportunity to investigate, if not the particular discriminatory incident, the method of discrimination manifested in prior charged incidents." *DeBerry v. Brookdale Univ. Hosp. & Med. Ctr.*, 11 F. Supp. 3d 387, 393–94 (E.D.N.Y. 2014). The Second Circuit has noted that the question is whether "defendants' alleged subsequent acts are *essentially* the same as the earlier allegedly wrongful conduct contained in the EEOC complaint[.]" *Almendral v. N.Y.S. Off. of Mental Health*, 743 F.2d 963, 967 (2d Cir. 1984) (emphasis added). Courts have found that new misconduct meets this standard where it evinces the same overall discriminatory purpose or end and is carried out using the same means as the previous misconduct contained in the EEOC charge. *See, e.g., id.* (holding exhaustion excused where both the unexhausted claim and the exhausted claim involved the "alleged manipulation of the civil service rules for discriminatory reasons in order to appoint someone other than [plaintiff]"); *Haner,* 2021 WL 230874, at *3 (holding new discriminatory acts were allegedly carried out in precisely the same manner because in "all three denied promotions, Plaintiff alleges that Defendants disregarded objective promotional criteria in favor of a discriminatory preference towards male employees and against female employees"); *Hinton v. City Coll. of N.Y.*, No. 05-CV-8951, 2008 WL 591802, at *14 (S.D.N.Y. Feb. 29, 2008) ("That an employer uses different pretexts to deny a woman promotion

year after year as part of a regular policy of discrimination does not require the victim to file repeated EEOC charges and repeated separate lawsuits.").

The Court agrees that any denial of Plaintiff's requests for FMLA leave, the failure to reinstate any days after Plaintiff was belatedly approved for FMLA leave, allegations regarding employees harassing Plaintiff at her home by hand delivering correspondence and spying on her, DePaul directing Plaintiff to an in-person meeting in June 2021, DePaul forcing Plaintiff to be recorded on Zoom in 2020 and 2021, DePaul requiring Plaintiff and others to provide make-up sessions in 2021 arising from the previous school year, the failure to hire Plaintiff for the per-session social worker position in 2021, and the denial of Plaintiff's 2022 ADA request were not carried out in precisely the same manner as the claims included in Plaintiff's EEOC charge. These allegations do not involve similar manipulations of Plaintiff's schedule to overburden her, false allegations levied against Plaintiff, or retaliation by preventing Plaintiff from attending meetings.  *See Bernard v. Care Design N.Y.*, No. 20-CV-1527, 2022 WL 4484556, at *9 (S.D.N.Y. Sept. 27, 2022) (holding termination was not reasonably related to failure to promote claim because termination did not involve conduct or persons that took place in the same manner as the failure to promote); *cf. DeBerry*, 11 F. Supp. 3d at 395 (holding standard met where both unexhausted and exhausted claims involved the manipulation of plaintiff's workload in order to "set her up for failure" and "blame [her] for poor performance"); *Santos*, 2009 WL 2432736, at *7 (holding allegations that plaintiff was passed over for the purchasing storeroom supervisor position because of the same discriminatory animus that led to the lost promotions listed in his EEOC charge were reasonably related).

However, Plaintiff's allegations regarding the false accusations Hamilton made in her correspondence to the Board in December 2021 and February 2022 and Gaon's false accusation

regarding Plaintiff's failure to submit verification sheets on February 4, 2021 reasonably relate to the allegations in the EEOC, because they are essentially the same as the earlier allegedly wrongful conduct contained in the EEOC charge, which specifically alleged that Plaintiff was issued a false letter of counsel. *See Rommage,* 2010 WL 4038754, at *7 (holding that allegations that the plaintiff was unjustly disciplined and allegations that she was unjustly terminated were reasonably related under the "same manner" theory because both were allegations of unfounded discipline). In that same vein, the allegations that Plaintiff was excluded from meetings and emails are reasonably related to Plaintiff's EEOC allegation that she was prevented from attending a union meeting.[2]

### 2. Timeliness

#### a. Title VII

"Title VII requires a plaintiff to pursue and exhaust administrative remedies before bringing suit, and . . . the statute of limitations for filing a charge of discrimination with the Equal Employment Opportunity Commission is 300 days." *Ragone v. Atl. Video at the Manhattan Ctr*., 595 F.3d 115, 126 (2d Cir. 2010) (alternation, quotation marks, and citation omitted). "The filing requirement is analogous to a statute of limitations, barring all claims arising outside the 300-day period." *Roches-Bowman v. City of Mount Vernon*, No. 21-CV-5572, 2022 WL 3648394, at *3 (S.D.N.Y. Aug. 24, 2022) (quotation marks and citation omitted).

Defendants contend that because Plaintiff's EEOC charge was filed on June 2, 2020, any occurrences prior to August 7, 2019, including allegations of unbalanced schedules that were

---

[2] Plaintiff's sole arguments regarding the retaliation exception have been addressed above, *supra* II.B.1.a.

assigned to Black but not white social workers (SAC ¶ 27) and Burnett commenting that a Black Special Education child with autism would wind up at Rikers Island (*id.* ¶ 28), are untimely and cannot support Plaintiff's Title VII claim.  (Defs.' Mem. 11.)

"To determine whether a claim was timely filed with the EEOC, the incidents of employment discrimination . . . must be categorized as either discrete acts or continuing violations."  *Castiblanco v. Am. Airlines, Inc.*, No. 17-CV-5639, 2019 WL 4751880, at *7 (E.D.N.Y. Sept. 29, 2019) (citation and quotation marks omitted).  To demonstrate a continuous violation "the plaintiff must allege both the existence of an ongoing policy of discrimination and some non-time-barred acts taken in furtherance of that policy."  *Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013) (internal quotation marks omitted); *see also Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994) ("[A] continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice.").  "The exception usually applies only in those cases involving specific discriminatory policies or mechanisms, such as discriminatory seniority lists or employment tests."  *Scroxton v. Town of Southold*, No. 08-CV-4491, 2010 WL 1223010, at *4 (E.D.N.Y. March 24, 2010).  Under the continuing violations doctrine, "if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone."  *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 155–56 (2d Cir. 2012) (quotation marks and citation omitted).  However, "in th[e] [Second] Circuit, the continuing violations doctrine is disfavored outside of a hostile work environment situation, and should only be applied in compelling circumstances."  *Williams v.*

*N.Y. City Dep't of Educ.*, No. 19-CV-1353, 2019 WL 4393546, at*9 (S.D.N.Y. Aug. 28, 2019) (quotation marks and citations omitted); *Trinidad v. N.Y. City Dep't of Corr.*, 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006) ("[T]he continuing violation doctrine is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances.") (internal quotation marks and citation omitted).

The continuing violation doctrine does not apply to discrete unlawful acts, even if the discrete acts were undertaken "pursuant to a general policy that results in other discrete acts occurring within the limitations period." *Chin*, 685 F.3d at 157. Further, "multiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Flores v. Entergy Nuclear Operations, Inc*., 313 F. Supp. 3d 511, 525 (S.D.N.Y. 2018) (quotation marks and citation omitted), *aff'd*, 768 Fed. App'x 139 (2d Cir. 2019); *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (holding the doctrine does not apply to "discrete [ ] acts, even where those discrete acts are part of a 'serial violation'"). Discrete acts are employment practices that occur at a "particular moment in time," rather than continuing over an extended time period. *See Port Auth. Police Asian Jade Soc'y of N.Y. & N.J. Inc. v. Port Auth. of N.Y. & N.J.*, 681 F. Supp. 2d 456, 463 (S.D.N.Y. 2010). Discrete acts include "termination, failure to promote, denial of transfer, or refusal to hire." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). Discrete acts "are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Id.* at 113. Rather, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Id*.

Courts in the Second Circuit have classified job assignments, including disproportionately difficult assignments, as discrete discriminatory acts. *See, e.g., Bertuzzi v.*

*Copiague Union Free Sch. Dist.*, No. 17-CV-4256, 2020 WL 5899949, at *17 (E.D.N.Y. Mar. 9, 2020), *report and recommendation adopted as modified*, No. 17-CV-4256, 2020 WL 3989493 (E.D.N.Y. July 15, 2020) ("[B]eing assigned a disproportionate number of special needs students . . . [and] being assigned an undesirable teaching schedule – all concern facially discrete acts."); *Casale v. Reo*, No. 04-CV-1013, 2005 WL 1660743, at *4 (N.D.N.Y. July 13, 2005) (rejecting the continuing violation theory in ADA action where plaintiff complained she was transferred to a more stressful and demanding workplace teaching emotionally disturbed children, and finding the transfers to be "discrete acts"); *Gross v. Nat'l Broad. Co., Inc.*, 232 F. Supp. 2d 58, 68 (S.D.N.Y. 2002) ("[A]lleged failures to compensate adequately, transfers, job assignments and [non-]promotions cannot form the basis for a continuing violation claim.").  Additionally, offensive or racist comments constitute discrete acts.  *See Anderson v. N.Y.C. Dep't of Fin.*, No. 19-CV-7971, 2020 WL 1922624, at *4 (S.D.N.Y. Apr. 21, 2020) (holding no continuing violation in allegations of failure to promote, failure to compensate for overtime, repeated transfers, and receipt of negative comments); *Kaur v. N.Y. City Health & Hosps. Corp.*, 688 F. Supp. 2d 317, 327–28 (S.D.N.Y. 2010) (holding supervisors' and coworkers' comments that they "don't want foreigners here" and that Indians "sell their daughters," "eat cows," and "never tell the truth" were discrete acts).

Accordingly, Plaintiff's allegations that she was assigned an unbalanced schedule assignment and subject to insensitive comments are discrete discriminatory acts.  *See Gaffney v. Vill. of Mamaroneck Police Dep't*, No. 15-CV-5290, 2016 WL 4547499, at *5 (S.D.N.Y. Aug. 31, 2016) (holding that age-related comments were discrete acts); *Bain v. Highgate Hotels, LP*, No. 08-CV-3263, 2009 WL 10705912, at *7 (E.D.N.Y. July 7, 2009) (concluding that "a series of discrete acts consisting of specific failures to assign [plaintiff] to the early shift[,] . . . a

26

particular denial of a requested vacation date, or an assignment of an onerous task on some

occasions" did "not support invocation of the continuing violation doctrine"); *Benjamin v.*

*Brookhaven Sci. Assocs., LLC*, 387 F. Supp. 2d 146, 153 (E.D.N.Y. 2005) (noting that

"undesirable work transfers[] and denial of preferred job assignments are considered discrete

acts"); *see also Birch v. City of N.Y.*, 675 F. App'x 43, 44 (2d Cir. 2017) (summary order)

(characterizing as discrete acts allegations of "punitive transfers, undesirable assignments, and

poor performance reviews").  Accordingly, the events alleged to have occurred prior to August 7,

2019 are "discrete acts, [and therefore] they are not actionable independently and are time-barred

with respect to Plaintiff's discrimination and retaliation claims for relief."  *Reyes v. Westchester*

*Cnty. Health Care Corp.*, No. 19-CV-8916, 2021 WL 310945, at *9 (S.D.N.Y. Jan. 29, 2021),

*aff'd*, No. 21-CV-410, 2021 WL 4944285 (2d Cir. Oct. 25, 2021), *cert. denied*, 142 S. Ct. 1671

(2022).

       However, "the Court may consider [Plaintiff's] other allegations as 'background

evidence' to determine whether [an] adverse action was the result of a discriminatory motive."

*Hagan v. City of N.Y.*, 39 F. Supp. 3d 481, 496 n.10 (S.D.N.Y. 2014) (citation omitted); *see also*

*Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) ("[E]xpiration of the

limitations period does not bar an employee from using the prior acts as background evidence in

support of a timely claim.") (quotation marks and citation omitted); *Jute v. Hamilton Sundstrand*

*Corp.*, 420 F.3d 166, 176–77 (2d Cir. 2005) (noting that "relevant background evidence, such as

statements by a decisionmaker or earlier decisions typifying the retaliation involved, may be

considered to assess liability on the timely alleged act" when retaliation allegations extend

beyond the limitations period) (citation omitted).  As such, the Court will consider Plaintiff's

allegations outside of the limitations period as "context and support for the timely claims that

Plaintiff asserts." *Allen* v. *N.Y.C. Dep't of Env'tal Prot.*, 51 F. Supp. 3d 504, 510 n.2 (S.D.N.Y. 2014) (citation omitted).

While the continuing violation doctrine is inapplicable to this case, this conclusion does not prevent the Court from considering pre-August 7, 2019 events in the context of Plaintiff's Title VII hostile work environment claim.  Unlike a claim for discrimination or retaliation, a claim for hostile work environment, by its "very nature involves repeated conduct," and, as such, "cannot be said to occur on any particular day." *Richard v. N.Y. City Dep't of Educ.*, No. 16-CV-957, 2017 WL 1232498, at *14 (E.D.N.Y. Mar. 31, 2017) (quoting *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010)).  This means that "so long as an act contributing to that hostile environment takes place within the statutory time period," otherwise time-barred incidents may be considered.  *Id*.

### b.  New York State Human Rights Law

NYSHRL claims have a three-year statute of limitations.  *Franchitti v. Cognizant Tech. Sols. Corp.*, No. 21-CV-2174, 2022 WL 2657171, at *8 (S.D.N.Y. July 8, 2022).  It is an open question in the Second Circuit whether the filing of an EEOC charge tolls the statute of limitations for discrimination claims under the New York Executive Law.  *See Shojae v. Harlem Hosp. Ctr.*, 764 F. App'x 113, 114 n.2 (2d Cir. 2019) (summary order) ("We have not resolved whether the statute of limitations under the [New York State Human Rights Law] and [New York City Human Rights Law] is tolled while a complaint is pending with the [EEOC].").  The Second Circuit has held, however, that "filing an EEOC charge does not toll the limitations period for state-law tort claims, even if those claims arise out of the same factual circumstances as the discrimination alleged in the EEOC charge." *Castagna v. Luceno*, 744 F.3d 254, 255 (2d Cir. 2014).  The recent trend in this District, however, is that the *Catagna* holding does not

extend to NYSHRL claims, such that the filing of an EEOC does toll the statute of limitations for state law discrimination claims. *See, e.g., Panchishak v. Cnty. of Rockland*, No. 20-CV-10095, 2021 WL 4429840, at *4 (S.D.N.Y. Sept. 27, 2021); *Schneider v. Wal-Mart Stores, Inc*., No. 16-CV-2010, 2019 WL 294309, at *3 (S.D.N.Y. Jan. 23, 2019); *Cameron v. N.Y.C. Dep't of Educ*., No. 15-CV-9900, 2018 WL 1027710, at *12 (S.D.N.Y. Feb. 21, 2018). Because the "overwhelming weight of authority within the [Second] Circuit holds that the filing of a charge with the EEOC tolls the statute of limitations for any related claims under the NYSHRL" this Court holds that the filing of the EEOC charge on June 2, 2020, tolled Plaintiff's NYSHRL claims and accordingly, any allegations occurring after June 2, 2017 are timely. *Franchitti*, 2022 WL 2657171, at *8.

### C. Section 1981 Claims

Defendants argue Plaintiff improperly brings claims against a municipality and state actors under 42 U.S.C. § 1981. (Defs.' Mem. 12.) "[Section] 1981 does not provide a separate private right of action against state actors," and § 1983 provides the "exclusive federal remedy" for such claims. *Duplan v. City of N.Y.*, 888 F.3d 612, 619, 621 (2d Cir. 2018) (emphasis omitted); *see also Gonzalez v. City of N.Y.*, 377 F. Supp. 3d 273, 285 (S.D.N.Y. 2019) (holding that *Duplan* applies not only to claims against the municipality itself but also against individual municipal defendants). Accordingly, Plaintiff cannot bring her "federal claims against [state actors] directly under Section 1981" instead, she must locate her "right to relief for the [state actors'] alleged Section 1981 violations in Section 1983, which provides a cause of action for statutory violations committed under color of state law." *Richardson v. City of N.Y.*, No. 17-CV-9447, 2018 WL 4682224, at *11 (S.D.N.Y. Sept. 28, 2018). As such, the Court considers Plaintiff's § 1981 claims under § 1983, as courts have done in the wake of *Duplan*. *See Duplan,*

888 F.3d at 616 (construing plaintiff's § 1981 claims against state actors as brought under § 1983); *see also In re N.Y. City Dep't of Educ.*, No. 15-CV-7150, 2019 WL 1433163, at *5 (S.D.N.Y. Mar. 29, 2019) ("Following the Second Circuit's approach in *Duplan*, the Court will construe the § 1981 claims as causes of action brought under § 1983 and discuss whether the claims can survive pursuant to § 1983 caselaw."); *see also Quinones v. City of Binghamton*, 997 F.3d 461, 468 n.4 (2d Cir. 2021) ("We note that a plaintiff may not sue a municipal defendant under section 1981 alone, and instead must raise any section 1981 claims through a section 1983 action. But plaintiffs need not invoke § 1983 expressly in order to state a claim, so long as they plead facts that plausibly indicate liability. This Court has thus construed a plaintiff's claims against a municipality, incorrectly brought under section 1981 alone, as § 1983 claims.") (citation and quotation marks omitted).

Generally, employment discrimination and retaliation claims brought under § 1981 are subject to a four-year statute of limitations. *See Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004); *Staten v. Village of Monticello*, No. 14-CV-4766, 2016 WL 7235796, at *4 n.6 (S.D.N.Y. Dec. 13, 2016) (noting that "if a claim under § 1981 was made possible by the 1991 amendments to § 1981, which extended the statute to include claims of discrimination in the conditions of employment, the claim is governed by the four-year statute of limitations set forth in 28 U.S.C. § 1658(a)" (citation and quotation marks omitted)); *Vaughn v. City of N.Y.*, No. 06-CV-6547, 2010 WL 2076926, at *7 (E.D.N.Y. May 24, 2010) ("Discrimination and retaliation claims under § 1981 are governed by the general four year statute of limitations found in 28 U.S.C. § 1658." (citation omitted)). However, claims brought pursuant to § 1983 in New York are subject to a three-year statute of limitations. *See Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (holding that § 1983 actions filed in New York are subject to a three-year statute of

limitations).  Because "Plaintiff[ ] ha[s] brought [her] [§] 1981 claims pursuant to [§] 1983, the

claims are subject to [§] 1983's three-year statute of limitations rather than [§] 1981's more

variable limitations period."  *Richardson*, 2018 WL 4682224, at *12 (citations omitted); *see also*

*City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 124–25 (2005) (explaining that § 1983's

statute of limitations does not depend on which underlying right the action is brought to enforce);

*Duplan*, 888 F.3d at 619–21 (holding that § 1983 provides the exclusive federal remedy against

state actors for violation of rights guaranteed by § 1981, and therefore rejecting the plaintiff's

attempts to bring a claim against state actors under § 1981 in order to benefit from the longer

statute of limitations).  Accordingly, all of Plaintiff's claims of discrete acts of retaliation and

discrimination brought pursuant to § 1983 that occurred prior to January 25, 2018 are time-

barred.  However, as stated, to the extent these allegations provide "context and support for the

timely claims that Plaintiff asserts," the Court will consider them.  *Allen*, 51 F. Supp. 3d at 510

n.2.

> ### D.  Discrimination Claims

Title VII prohibits discrimination against an employee based on that employee's "race,

color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a).  The NYSHRL echoes this

prohibition and adds to it, prohibiting discrimination against an employee based on that

employee's "age, race, creed, color, national origin, sexual orientation, gender identity or

expression, military status, sex, disability, predisposing genetic characteristics, familial status,

marital status, or status as a victim of domestic violence."  N.Y. Exec. Law § 296(1).  Section

1983 states, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the jurisdiction
> thereof to the deprivation of any rights, privileges, or immunities secured by the

31

Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  Interpreting this language, the Supreme Court has stated that Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).

Finally, Section 1981 provides that:

All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a).  The Second Circuit has construed this provision to prohibit employment discrimination on the basis of race.  *See Lauture v. Int'l Bus. Machs. Corp.*, 216 F.3d 258, 260–61 (2d Cir. 2000) (holding that § 1981 covers claims of employment discrimination brought both by employees working under contract and at-will employees).

Claims of discrimination under Title VII, NYSHRL, and § 1981 (pursuant to §1983) are analyzed under the familiar three-part framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Walsh v. N.Y.C. Hous. Auth.*, 828 F.3d 70, 74–75 (2d Cir. 2016) ("Claims of . . . discrimination under Title VII and the NY[S]HRL are analyzed under the familiar burden-shifting framework established in *McDonnell Douglas* . . . ."); *Littlejohn v. City of N.Y.*, 795 F.3d 297, 312 (2d Cir. 2015) ("[Plaintiff's] disparate treatment claim under Title VII, § 1981, and § 1983 is subject to the burden shifting evidentiary framework set forth in *McDonnell Douglas*.") (citing *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 491 (2d Cir. 2010)); *Zheng-Smith v. Nassau Health Care Corp.*, 486 F. Supp. 3d 611, 620–21 (E.D.N.Y. 2020)

("Claims for race and national origin discrimination under Title VII, [the] NYSHRL, and . . . § 1981 are all analyzed using the burden-shifting framework established by the Supreme Court in *McDonnell Douglas*[.]"), *aff'd*, 2021 WL 4097316 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 1675 (2022).  "[F]or a § 1983 discrimination claim to survive a motion for judgment on the pleadings or a motion to dismiss, a plaintiff must plausibly allege a claim under the same standards applicable to a Title VII claim—and that the adverse action was taken by someone acting under color of state law.  *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 89 (2d Cir. 2015) (quotation marks omitted).[3]

Under the *McDonnell Douglas* framework, a plaintiff must first show that "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 42 (2d Cir. 2000) (citing *McDonnell Douglas*, 411 U.S. at 802.  If a plaintiff successfully does so, the burden then shifts to the employer to demonstrate a legitimate, non-discriminatory purpose for the adverse employment action.  *See McDonnell Douglas*, 411 U.S. at 802.  Finally, if an employer satisfies this requirement, the burden shifts back to the employee to demonstrate, by a preponderance of the evidence, that the non-discriminatory reason was actually a pretext for discrimination.  *See id*. 804–05; *see also Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 136 (2d Cir. 2016) (articulating the three step *McDonnell Douglas* framework).

Because "a plaintiff is not required to plead a prima facie case under *McDonnell Douglas*, at least as the test was originally formulated, to defeat a motion to dismiss," *Vega*, 801

---

[3] Here, Defendants' actions are "under color of state law as [Defendants] are employees of a public school."  *Vega*, 801 F.3d at 89.

F.3d at 84 (italics omitted), the Court need only concern itself with the first phase of the

*McDonnell Douglas* framework, *see Munoz-Nagel v. Guess, Inc.*, No. 12-CV-1312, 2013 WL

6068597, at *1 (S.D.N.Y. Nov. 15, 2013) ("[A] [p]laintiff need not make out a prima facie case

at the pleading stage, and may withstand a motion to dismiss by providing a short and plain

statement of the claim that shows that she is entitled to relief that gives [the defendant] fair

notice of the . . . discrimination claim and the grounds upon which it rests." (italics and citation

omitted)).  "Although [the] [p]laintiff need not allege facts sufficient to make out a prima facie

case for any of her discrimination claims in her [c]omplaint, the elements thereof provide an

outline of what is necessary to render her claims for relief plausible."  *Sommersett v. City of N.Y.*,

No. 09-CV-5916, 2011 WL 2565301, at *5 (S.D.N.Y. June 28, 2011) (italics omitted); *see also*

*Littlejohn*, 795 F.3d at 311 & n.9 (noting that while a plaintiff need not plead a prima facie case

of discrimination, "the elements of a prima facie case may be used as a prism to shed light upon

the plausibility of the claim" (quotation marks and citation omitted)); *Ndremizara v. Swiss Re*

*Am. Holding Corp.*, 93 F. Supp. 3d 301, 312 (S.D.N.Y. 2015) (collecting cases); *Barker v. UBS*

*AG*, No. 09-CV-2084, 2011 WL 283993, at *5 (D. Conn. Jan. 26, 2011) ("[E]ven though

establishing a prima facie case of . . . discrimination is not necessary to survive a motion to

dismiss, courts do use the standard as a guidepost when determining whether the plaintiff has

provided the defendant with fair notice of her claim, as required by the Federal Rules of Civil

Procedure.").

### 1.  Race Discrimination Under Title VII, §1983, and NYSHRL

Defendants appear to concede—or at least do not contest for purposes of their Motion—

that Plaintiff (1) is a member of a protected class as a Black woman and (2) was qualified for the

position she held as a social worker.  (*See generally* Defs.' Mem.; Defs.' Reply Mem.)

However, Defendants argue that Plaintiff cannot establish a prima facie case of discrimination

because she did not suffer an adverse employment action.  (*See* Defs.' Mem. 13–15.)  And, even assuming arguendo that Plaintiff could demonstrate that she suffered an adverse employment action, Defendants argue Plaintiff has not plausibly alleged that Defendants' actions occurred under circumstances giving rise to an inference of discrimination.  (*See id.* at 8–11.)  Plaintiff argues that she suffered multiple adverse employment actions and has sufficiently alleged discriminatory intent.  (*See generally* Pl.'s Mem.)

### a.  Adverse Employment Action

 "An adverse employment action is 'a materially adverse *change* in the terms and conditions of employment.'"  *Mathirampuzha v. Potter*, 548 F.3d 70, 78 (2d Cir. 2008) (quoting *Sanders v. N.Y.C. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)).  The Second Circuit has instructed that:

> To be materially adverse, a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities.  Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation.

*Id.* (quoting *Sanders*, 361 F.3d at 755); *see also Tolbert v. Smith*, 790 F.3d 427, 435 (2d Cir. 2015) (holding similarly).  "Moreover, while there is no exhaustive list of what constitutes an adverse employment action, courts have also held that denial of promotion, addition of responsibilities, involuntary transfer that entails objectively inferior working conditions, denial of benefits, denial of a requested employment accommodation, denial of training that may lead to promotional opportunities, and shift assignments that make a normal life difficult for the employee, among other things, constitute adverse employment actions" under certain circumstances.  *Potash v. Fla. Union Free Sch. Dist.*, 972 F. Supp. 2d 557, 584 (S.D.N.Y. 2013) (quotation marks and citation omitted).

"[A]dverse employment actions . . . must be 'more than trivial, insubstantial, or petty.'" *Colon v. Fashion Inst. of Tech. (State Univ. of N.Y.)*, 983 F. Supp. 2d 277, 288 (S.D.N.Y. 2013) (quoting *Williams v. Regus Mgmt. Grp., LLC*, 836 F. Supp. 2d 159, 173 (S.D.N.Y. 2011)). *See id.* (finding that supervisor's "taking [the plaintiff's] bathroom keys, . . . insistence that she get a mannequin on one occasion, and . . . 'talking down' to [the plaintiff]" did not constitute adverse employment actions (alteration omitted)); *see also Abalola v. St. Luke's-Roosevelt Hosp. Ctr.*, No. 20-CV-6199, 2022 WL 973861, at *7 (S.D.N.Y. Mar. 30, 2022) ("[The plaintiff's] claims that [two individuals] harassed and demeaned her do not constitute adverse employment actions."); *LeeHim v. N.Y.C. Dep't of Educ.*, No. 17-CV-3838, 2017 WL 5634128, at *4 (S.D.N.Y. Nov. 21, 2017) (explaining that "'petty slights,' such as shushing" and "rude and intemperate conduct" do not amount to adverse employment actions). Indeed, the Supreme Court has explained that "Title VII . . . does not set forth 'a general civility code for the American workplace.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998)).

Plaintiff claims that she suffered adverse employment action in the form of "an unbalanced work schedule and high caseload." (Pl.'s Mem. 10.) The Second Circuit has "held that the assignment of an excessive workload" as a result of "discriminatory intent, can be an adverse employment action," because it is "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Vega*, 801 F.3d at 88 (citation and quotation marks omitted). Accordingly, when an assigned workload is "disproportionately heavy" it can constitute an adverse employment action. *Id.* at 85 (citing *Feingold v. N.Y.*, 366 F.3d 138, 153 (2d Cir. 2004) (holding that a trier of fact could conclude that an Administrative Law Judge was subject to

disparate treatment crediting his allegations that he was assigned a heavier docket of cases as a result of discriminatory intent)).

The earliest date that this Court can consider under various statutes of limitation is June 2, 2017.  For the 2018–2019 school year, Plaintiff alleges that her schedule was unbalanced because she had to service 26 students at Rebecca Turner in two days and 13 at Lincoln in three days which negatively affected her ability to do her job.  (SAC ¶ 26.)  Plaintiff further alleges that only Black social workers were assigned such schedules that year—no non-Black social workers were assigned such "strained" schedules.  (*Id*. ¶ 27.)   Because Plaintiff has pled that her schedule resulted in a disproportionately heavy workload as compared to her non-Black colleagues, namely that her caseload at Rebecca Turner was oversubscribed, which negatively affected her ability to perform her job duties, she has sufficiently alleged an adverse action.  *See Alexander v. N.Y. City Dep't of Educ.*, No. 19-CV-7023, 2020 WL 7027509, at \*6 (S.D.N.Y. Nov. 30, 2020) (holding that the oversubscribing of plaintiff's class was sufficient to allege an adverse action when no teachers under the age of 40 had oversubscribed classes); *Kunik v. N.Y. City Dep't of Educ.,* No. 15-CV-9512, 2017 WL 4358764, at \*9 (S.D.N.Y. Sept. 29, 2017) (holding that plaintiff's allegations that she "received a heavier workload than her comparators, meets the minimal bar necessary to plead an adverse employment action at the pleadings stage") (quotation marks and citation omitted); *Johnson v. Long Island Univ.,* 58 F. Supp. 3d 211, 223–24 (E.D.N.Y. 2014) (holding the plaintiff sufficiently pled the adverse employment action on account of his race and gender where he was assigned seven weeks of "duty," while other similarly situated employees were only given two weeks).

However, the allegations made in the Second Amended Complaint that pertain to the 2019–2020 school year, namely that the number of Plaintiff's students on her caseload increased

to 57 students between Lincoln (2.5 days and 13 students) and Rebecca Turner (44 students and 2.5 days), are silent as to whether that workload was excessive or unbalanced compared to her other colleagues.  (SAC ¶ 30.)[4]  "It is only where a plaintiff is given a workload heavier than similarly situated employees where such a workload may constitute an adverse employment action."  *Shukla v. Deloitte Consulting LLP*, No. 19-CV-10578, 2020 WL 8512852, at *8 (S.D.N.Y. Nov. 17, 2020), *report and recommendation adopted*, No. 19-CV-10578, 2021 WL 1131507 (S.D.N.Y. Mar. 24, 2021).  Accordingly, the Court concludes that Plaintiff has not plausibly alleged any adverse employment actions during the 2019–2020 school year.  *See Rodriquez-Coss v. Sessions*, No. 16-CV-633, 2018 WL 3213290, at *10 (D. Conn. June 29, 2018) (holding no adverse action when lawyer did not demonstrate that her workload was excessive compared with other employees).

Next, Plaintiff argues that she applied for and was denied "the right to work during the 2020 summer program and earn additional income and seniority with respect to the summer program," which she had worked at the previous two summers, and "per session work for social workers to provide make-up counseling services before and after school."  (Pl.'s Mem. 11.) Plaintiff specifically alleges that false accusations that she declined to provide services to students prevented her from obtaining per session opportunities.  (SAC ¶¶ 57, 64.)  Courts in the Second Circuit have held that the denial of per session and summer work can constitute adverse employment actions.  *See, e.g., DeLaRosa v. N.Y. City Dep't of Educ.*, No. 21-CV-4051, 2022 WL 2752589, at *4 (S.D.N.Y. July 14, 2022) (holding that denying plaintiff work for summer

---

[4] There are no allegations regarding an unbalanced schedule for the 2020-2021 academic year.  (*See generally* SAC.)  Plaintiff was initially assigned in unbalanced schedule for the 2021-2022 academic year, but reached an agreement regarding her assignment in September 2021. (*Id*. ¶ 52.)

school which prevented plaintiff from earning additional wages constituted an adverse employment action); *Zoulas v. N.Y. City Dep't of Educ.*, 400 F. Supp. 3d 25, 54 (S.D.N.Y. 2019) (holding the "inability to pursue per session work as a result of poor performance reviews rises to the level of an adverse employment action"); *Bagarozzi vN.Y. City Dep't of Educ.*, No. 18-CV-4893, 2019 WL 1454316, at *5 (S.D.N.Y. Mar. 31, 2019) (noting denial of per session opportunities "qualifies as an adverse employment action"); *Herling v. N.Y. City Dep't of Educ.*, No. 13-CV-5287, 2014 WL 1621966, at *6 (E.D.N.Y. Apr. 23, 2014) ("Denying an employee the opportunity to work overtime, comp time, or additional per-session employment may . . . constitute an adverse employment action."); *see also Dimitracopoulos v. City of N.Y.*, 26 F. Supp. 3d 200, 214 (E.D.N.Y. 2014) (holding that a "jury could plausibly find the temporary loss of plaintiff's 'per session' employment" was an adverse action).  Accordingly, the Court holds that Plaintiff's denial of the opportunity to perform summer session or per session work constitutes an adverse action.  *See Reiss v. Hernandez*, No. 17-CV-159, 2019 WL 4688639, at *6 (S.D.N.Y. Sept. 26, 2019), *aff'd*, 852 F. App'x 620 (2d Cir. 2021) (holding that the denials of per session work in the summer school and afterschool programs were adverse employment actions); *Shapiro v. N.Y.C. Dep't of Educ.*, 561 F. Supp. 2d 413, 423 (S.D.N.Y. 2008) (denying summary judgment where teachers who received unsatisfactory end-of-year ratings produced evidence that consequences of such ratings included removal from per session paid position, inability to transfer within the school district, inability to work in summer school, and damaged professional reputation); *cf. Sotomayor v. City of N.Y.*, 862 F. Supp. 2d 226, 256 (E.D.N.Y. 2012) (holding that "the loss of [plaintiff's] opportunities for 'per session' employment . . . could [] constitute [an] adverse action," but that there was no adverse employment action where plaintiff did not apply for per-session work and nothing in the record indicated she would have gotten the job).

39

Finally, Plaintiff claims she was "unfairly scrutinized and reprimanded by her administration, [and] received unwarranted disciplinary letters." (Pl.'s Mem. 11.)  Both the Second Circuit and courts within the Second Circuit have made clear that many negative personnel actions taken by employers do not constitute adverse employment actions sufficient to establish a prima facie case of employment discrimination when they do not affect the terms and conditions of employment.  For instance, "criticism of an employee (which is part of training and necessary to allow employees to develop, improve[,] and avoid discipline) is not an adverse employment action." *Tepperwien v. Entergy Nuclear Ops., Inc.*, 663 F.3d 556, 570 (2d Cir. 2011) (quoting *Weeks v. N.Y. State (Div. of Parole)*, 273 F.3d 76, 86 (2d Cir. 2001)); *see also Sanders v. N.Y. City Hum. Res. Admin.*, 361 F.3d 749, 756 (2d Cir. 2004) (holding that negative performance evaluation did not constitute an adverse employment action where the plaintiff "offered no proof that this evaluation had any effect on the terms and conditions of her employment").  Indeed, even "reprimands and excessive scrutiny do not constitute adverse employment actions in the absence of other negative results such as a decrease in pay or being placed on probation." *Dawson v. City of N.Y.*, No. 09-CV-5348, 2013 WL 4504620, at *10 (S.D.N.Y. Aug. 19, 2013) (alteration and citation omitted).  Here, Plaintiff has not alleged that the scrutiny, reprimands, or disciplinary letters resulted in any materially adverse change in the terms and conditions of her employment, accordingly they do not constitute adverse actions. *Zoulas*, 400 F. Supp. 3d at 55 ("[C]laims that the Defendants embarrassed, demeaned, intimidated, and excessively scrutinized her do not constitute adverse employment actions.").

### b.  Causation

"Under Title VII and the NYSHRL, a plaintiff need not prove (or plead) that 'the causal link between injury and wrong is so close that the injury would not have occurred but for the

40

act.'" *Farmer v. Shake Shack Enterprises, LLC*, 473 F. Supp. 3d 309, 325–26 (S.D.N.Y. 2020)

(quoting *Lenzi v. Systemax, Inc*., 944 F.3d 97, 107 (2d Cir. 2019)).  "So-called but-for causation

is not the test.  It suffices instead to show that the motive to discriminate was one of the

employer's motives, even if the employer also had other, lawful motives that were causative in

the employer's decision."  *Lenzi*, 944 F.3d at 107 (emphasis omitted) (quoting *Univ. of Tex. Sw.

Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013)).  "The necessary inference may be derived from

a variety of circumstances, including 'the employer's criticism of the plaintiff's performance in

ethnically degrading terms; or its invidious comments about others in the employee's protected

group; or the more favorable treatment of employees not in the protected group[.]'"  *Detouche v.

JTR Transp. Corp*., No. 17-CV-7719, 2020 WL 7364116, at *10 (S.D.N.Y. Dec. 14, 2020)

(quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).  However, under § 1981,

to "prevail, a plaintiff must initially plead and ultimately prove that, but for race, it would not

have suffered the loss of a legally protected right."  *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-

Owned Media*, 140 S. Ct. 1009, 1019 (2020).

　　　　"A showing of disparate treatment—that is, a showing that an employer treated [the]

plaintiff less favorably than a similarly situated employee outside his protected group—is a

recognized method of raising an inference of discrimination for the purpose of making out a

prima facie case.'"  *Ruiz*, 609 F.3d at 493 (quoting *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379

(2d Cir. 2003) (internal quotation marks omitted)).  "[A] plaintiff can raise an inference of

discrimination by demonstrating the disparate treatment of at least one similarly situated

employee outside [her] protected group and sufficient facts from which it may reasonably be

inferred that 'the plaintiff's and comparator's circumstances . . .  bear a reasonably close

resemblance.'"  *Sutter v. Dibello*, No. 18-CV-817, 2021 WL 930459, at *21 (E.D.N.Y. Mar. 10,

2021) (quoting *Hu v. City of N.Y.*, 927 F.3d 81, 96–97 (2d Cir. 2019)).  The alleged comparator

must be similar enough "to support at least a minimal inference that the difference of treatment

may be attributable to discrimination." *McGuinness v. Lincoln Hall*, 263 F.3d 49, 54 (2d Cir.

2001); *see also Johnson v. Schmid*, 750 F. App'x 12, 17 (2d Cir. 2018) (summary order);

*Cardwell v. Davis Polk & Wardwell LLP*, No. 19-CV-10256, 2020 WL 6274826, at *22

(S.D.N.Y. Oct. 24, 2020).  "Whether two employees are similarly situated ordinarily presents a

question of fact for the jury."  *Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000); *see

also Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *5 (S.D.N.Y. Jan. 8, 2021)

("[O]n a Rule 12(b)(6) motion the Court must determine whether, based on a plaintiff's

allegations in the complaint, it is plausible that a jury could ultimately determine that the

comparators are similarly situated. . . . To satisfy this standard, the plaintiff's and comparator's

circumstances must bear a reasonably close resemblance.") (quotation marks and citations

omitted); *Marom v. Town of Greenburgh*, No. 18-CV-7637, 2020 WL 4891339, at *4 (S.D.N.Y.

Aug. 19, 2020) ("While there is no precise formula to determine whether an individual is

similarly situated to comparators, . . .  at the motion to dismiss stage, a plaintiff must still allege

facts that plausibly demonstrate that he is similarly situated to the comparators.").

　　　　Plaintiff's allegations that non-Black social workers did not have unbalanced schedules

while Black social workers did—employees who hold the same educational degree and title—

suffice to allege similarly situated comparators at this stage.  *See Syeed v. Bloomberg L.P.*, 568

F. Supp. 3d 314, 321 (S.D.N.Y. 2021) (holding plaintiff plausibly alleged an inference of

discrimination when comparators who received preferential treatment were her "team members"

and performed "similar job duties" to her); *Johnson*, 58 F. Supp. 3d at 224–25 ("Although the

[c]omplaint is sparse on specifics with respect to how his colleagues are similarly situated to

him, the [c]ourt finds that [p]laintiff has stated a plausible inference of discrimination based on disparate treatment with respect to the claims that [the defendant] treated him differently by denying him the opportunity to earn additional compensation and by assigning him significantly more work than his fellow hall directors, but just barely."); *Barrett v. Forest Lab'ys, Inc.*, 39 F. Supp. 3d 407, 434 (S.D.N.Y. 2014) ("[T]he six [p]laintiffs who identify a male comparator who held the same title have at least plausibly alleged that he performed similar work."); *Trachtenberg v. Dep't of Educ. of City of N.Y.*, 937 F. Supp. 2d 460, 471 (S.D.N.Y. 2013) (holding plaintiff sufficiently pled an inference of discrimination when she alleged teachers under 40 were treated differently than teachers above 40, who were subject to similar mistreatment as plaintiff); *see also Chepak v. Metro. Hosp.*, 555 Fed. App'x 74, 76 (2d Cir. 2014) (summary order) (allegations that plaintiff was paid less than males doing the same job plausibly stated a gender discrimination claim); *Gonzalez v. Carestream Health, Inc.*, 520 Fed. App'x 8, 10 (2d Cir. 2013) (summary order) (holding sixty-year-old plaintiff's allegation that he was terminated for pretextual reasons while younger coworkers were maintained was sufficient to state a claim of age discrimination under ADEA); *cf. Bilge v. City Univ. of N.Y.*, No. 15-CV-8873, 2017 WL 498580, at *9 (S.D.N.Y. Jan. 19, 2017) ("Numerous courts within the Second Circuit have granted motions to dismiss disparate treatment claims where the complaint was entirely devoid of any details regarding the purported comparators, e.g., who they are, what their positions or responsibilities were at the company, how their conduct compared to plaintiffs'[,] or how they were treated differently by defendants." (italics, alterations, quotation marks, and citation omitted)).

That Plaintiff did not provide names of specific comparators is not fatal to her claim. *See Thomas v. Venditto*, 925 F. Supp. 2d 352, 365 (E.D.N.Y. 2013) (finding that the complaint

plausibly alleged that the plaintiff was treated differently from other similarly situated individuals, notwithstanding that it failed to provide the names and addresses of the comparators).  Indeed, a complaint need not put "the moving [d]efendants on notice of who [the allegedly similarly situated] officers are," . . . [it need] only contain enough factual allegations to make a claim plausible."  *Sutter,* 2021 WL 930459, at *22.

Plaintiff, however, does not provide any comparators with regards to her allegations regarding her loss of summer session and per session opportunities.  (*See generally* SAC.)[5] Plaintiff posits that Burnett's comment that a Black Special Education child with autism would wind up at Rikers Island supports an inference of race-based animus.  (Pl.'s Mem. 13.) Allegations of discriminatory comments directed at a plaintiff's racial group are a recognized method of establishing discriminatory intent.  *See Chertkova v. Conn. Gen. Life Ins. Co*., 92 F.3d 81, 91 (2d Cir. 1996) (noting that "circumstances that give rise to an inference of discriminatory motive include actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus").  "In determining whether a remark is probative [of discriminatory intent], [courts] have considered four factors: (1) who made the remark (i.e., a decision-marker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)."  *Henry v. Wyeth Pharm., Inc*., 616 F.3d 134, 149 (2d Cir. 2010).  "The more removed remarks are from an employer's adverse

---

[5] Plaintiff alleges that she was reprimanded for arriving late to a meeting while similarly situated Caucasian colleagues who arrived later were not.  (SAC ¶ 31.)  However, this allegation does not support Plaintiff's contention that she was discriminated on the basis of race as it pertains to summer employment and per session work, for which she does not supply comparators.

action, the more likely that such remarks will be non-probative stray remarks." *Smith v. N.Y. & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 337 (S.D.N.Y. 2020) (quotation marks omitted); *Danzer v. Norden Sys., Inc*., 151 F.3d 50, 56 (2d Cir. 1998) ("[S]tray remarks, even if made by a decision maker, do not constitute sufficient evidence to make out a case of employment discrimination.").

While the Second Amended Complaint alleges Burnett was Plaintiff's supervisor, Plaintiff does not allege Burnett had any responsibility for Plaintiff's schedule, caseload, or Plaintiff's inability to work during the summer session or per session during the year.  (*See generally* SAC.)  Additionally, Plaintiff only alleges that the comment was made at some point in 2018—whereas the denials of summer and per session work occurred after 2020.  (*Id.* ¶¶ 41, 55, 57.)  Because Burnett's comment is not related in time or context to any employment decision at issue in this case, the remark is not probative of discriminatory intent.  *See Alexis Paupaw-Myrie v. Mount Vernon City Sch. Dist. & Natasha Hunter-Mcgregor*., No. 21-CV-11237, 2023 WL 1109702, at *9 n.16 (S.D.N.Y. Jan. 30, 2023) (holding no inference of discriminatory intent when "[a]lthough Dr. Hunter-McGregor was [p]laintiff's supervisor, and a decisionmaker to an extent, the remark had no relation in time or context to the decision-making process"); *Johnson v. L'Oreal USA,* No. 18-CV-9786, 2021 WL 4482167, at *12 (S.D.N.Y. Sept. 30, 2021) (holding no inference of discriminatory intent when plaintiff did not suggest "[the] remarks were made in connection with the decision to fire her" and remarks were not made by a decisionmaker); *Smith v. N.Y. & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 338 (S.D.N.Y. 2020) (holding alleged discriminatory comment nonprobative where plaintiff could not tie it "to an employment decision"); *Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 973 F. Supp. 2d 386, 399 (S.D.N.Y. 2013), *aff'd*, 586 F. App'x 739 (2d Cir. 2014) (holding no

inference of discriminatory intent when assistant superintendent had no "input into the decision as to whether the plaintiff would receive tenure" and the comment was made more than two years before the adverse decision). Indeed, "the stray remarks of a decision-maker, without more, cannot prove a claim of employment discrimination." *Abdu–Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 468 (2d Cir. 2001); *see Fletcher v. ABM Bldg. Value*, 775 F. App'x 8, 13 (2d Cir. 2019) (summary order) ("[S]tray remarks, even if made by a decisionmaker, do not constitute sufficient evidence to make out a case of employment discrimination."); *Campbell v. All. Nat'l Inc.*, 107 F. Supp. 2d 234, 247 (S.D.N.Y. 2000) ("Stray remarks . . . unrelated to the decision process are rarely given great weight, particularly if they were made temporally remote from the date of the decision.").

Because none of Plaintiff's surviving race discrimination claims was exhausted under Title VII, Plaintiff's Title VII race discrimination claim does not survive.

### 2.  Disability Discrimination Under NYSHRL

"The elements of a NYSHRL discrimination claim are generally the same as those under the ADA[.]" *Scarville v. Living Res. Corp.*, No. 21-CV-807, 2022 WL 4365863, at *7 (N.D.N.Y. Sept. 21, 2022). The ADA prohibits covered entities from discriminating against qualified individuals on the basis of disability. 42 U.S.C. § 12112(a). "To evaluate a claim for discrimination under the ADA, the familiar burden-shifting analysis established by the Supreme Court in *McDonnell Douglas* . . . applies." *Clark v. Jewish Childcare Ass'n, Inc.*, 96 F. Supp. 3d 237, 248 (S.D.N.Y. 2015). Under this framework, Plaintiff bears the initial burden of proving her prima facie case of discrimination by a preponderance of the evidence. *Id.* To do so, Plaintiff must show that "(1) her employer is subject to the ADA; (2) she was disabled within the meaning of the ADA; (3) she was otherwise qualified to perform the essential functions of her

job; and (4) she suffered adverse employment action because of her disability." *Scarville*, 2022 WL 4365863, at *5 (alterations and citation omitted).[6]

Plaintiff has not alleged that her unbalanced schedule or the denial of her ability to work over the summer session or per session work are in any way related to any disability. (*See generally* SAC.) Plaintiff first alleges she was experiencing panic attacks and symptoms of depression in relation to her February 11, 2021 application for FMLA leave. (*Id*. ¶ 45.) The first mentioned reference to ADA accommodations is on June 1, 2021, after Plaintiff returned to her social work position following her leave. (*Id*. ¶ 52.) The unbalanced schedule and denial of summer employment adverse employment actions predate any disability that Plaintiff has alleged to have. Furthermore, Plaintiff does not link the denial of per session work to her alleged disability in any way, for instance, by identifying any instances of direct animus or differential treatment of similarly situated competitors. (*See generally id*.)

Insofar as Plaintiff claims that the Defendants' failure to provide her with reasonable accommodations constitutes an adverse employment action in the NYSHRL discrimination context, such a claim is misguided. (SAC ¶ 85.) Discrimination claims may be brought under a theory of adverse employment action or of failure to provide reasonable accommodation. *McMillan v. City of N.Y*, 711 F.3d 120, 125–26 (2d Cir. 2013). Under a theory of adverse employment action, the denial of a reasonable accommodation satisfies the *causation* element

---

[6] One key difference between the NYSHRL and the ADA is that the NYSHRL has a broader definition of disability than does the ADA in that it does not require any showing that the disability substantially limits a major life activity. *See Ugcatz v. U.P.S., Inc*., 10-CV-1247, 2013 WL 1232355, at *14 (E.D.N.Y. Mar. 26, 2013); *see also Welch v. U.P.S., Inc.*, 871 F. Supp. 2d 164, 198 (E.D.N.Y. 2012) (noting that NYSHRL is not a "carbon copy of the ADA"). Rather, "[u]nder the NYSHRL ..., Plaintiff need only prove that [s]he has a 'medically diagnosable impairment.'" *Ugcatz*, 2013 WL 1232355, at *14 (quoting *Attis v. Solow Realty Dev. Co.*, 522 F. Supp. 2d 623, 631–32 (S.D.N.Y. 2007)).

where the failure to accommodate results in an adverse employment action.  *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 328 (2d Cir. 2000) ("Terminating a disabled employee . . . who can perform the essential functions of the job but cannot return to work because the employer has denied his request for reasonable accommodation, is disability discrimination under the ADA."); *Ugactz*, 2013 WL 1232355, at *7 (holding a reasonable jury could find that defendant discriminated against plaintiff because of his disability when the alleged failure to accommodate resulted in plaintiff's termination).  Accordingly, "a failure to provide a reasonable accommodation in and of itself does not equate to an adverse employment action" in the disability discrimination context.  *Berger v. N.Y. City Police Dep't*, 304 F. Supp. 3d 360, 368 (S.D.N.Y. 2018).

Plaintiff may also be alleging that directing her to undergo a medical examination constituted an adverse employment action in violation of the NYSHRL protection against disability discrimination.  (SAC ¶ 85.)  However, "sending plaintiff to undergo a medical examination, even if inappropriate under the circumstances, does not constitute an adverse employment action unless accompanied by a material change in the 'terms and conditions' of plaintiff's employment."  *Hoeffner v. Cnty. of Orange*, No. 17-CV-9344, 2020 WL 1165851, at *7 (S.D.N.Y. Mar. 10, 2020) (alterations, quotation marks, and citation omitted); *see also Sosa v. N.Y. State Div. of Hum. Rts.*, No. 11-CV-5155, 2015 WL 5191205, at *11 n.11 (E.D.N.Y. Sept. 4, 2015) ("The court notes that the referral to the medical examination itself is not a materially adverse employment event."); *Dimitracopoulos*, 26 F. Supp. 3d at 213 (holding that a "one-time referral to an involuntary medical examination is not grounds for a claim of age discrimination").  Plaintiff has not alleged any adverse employment action occurred as a result of the medical examination; accordingly, undergoing the medical examination alone did not constitute an

adverse employment action.  *See Hoeffner*, 2020 WL 1165851, at *7 (holding that requiring a

plaintiff to undergo a medical examination did not constitute an adverse employment action as a

matter of law); *Floyd v. S. Westchester BOCES*, No. 14-CV-5842, 2015 WL 5459992, at *6

(S.D.N.Y. July 31, 2015) (holding a medical examination was not an adverse action when the

complaint "fails to allege how undergoing a physical in November 2013 resulted in a materially

adverse change in the terms and conditions of [plaintiff's] employment.")  (quotation marks and

citation omitted).

Because Plaintiff has not alleged an adverse employment action that occurred because of

any disability, that claim is dismissed.  *Berger*, 304 F. Supp. 3d at 368 (dismissing disability

discrimination claim when plaintiff failed to allege any adverse employment action that occurred

because of plaintiff's disability).

### E.  Retaliation Under Title VII, §1983, and NYSHRL

Title VII's anti-retaliation provision prohibits an employer from "discriminat[ing] against

any of his employees . . . because [the employee] has opposed any practice made an unlawful

employment practice by this subchapter[.]"  42 U.S.C. § 2000e-3(a).  In other words, "Title VII

forbids an employer to retaliate against an employee for . . .  complaining of employment

discrimination prohibited by Title VII[.]"  *Kessler v. Westchester Cnty. Dep't of Soc. Servs.*, 461

F.3d 199, 205 (2d Cir. 2006).  Courts analyze claims for retaliation pursuant to Title VII under

the familiar framework set forth by the Supreme Court in *McDonnell Douglas*. *See Zann Kwan*

*v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013) ("Federal and state law retaliation claims

are reviewed under the burden-shifting approach of *McDonnell Douglas*[.]").  "Under the first

step of the *McDonnell Douglas* framework, the plaintiff must establish a prima facie case of

retaliation[.]"  *Id.* at 844 (citation omitted).  Once the plaintiff has done so, "the burden shifts to

the employer to articulate some legitimate, non-retaliatory reason for the employment action."
*Id*. at 845 (citation omitted).  "The employee at all times bears the burden of persuasion to show
retaliatory motive."  *Cox v. Onondaga Cnty. Sheriff's Dep't*, 760 F.3d 139, 145 (2d Cir. 2014)
(citation omitted).  "As with other claims analyzed under the *McDonnell Douglas* framework,
the allegations need only give plausible support to the reduced prima facie requirements."
*Thomson v. Odyssey House*, No. 14-CV-3857, 2015 WL 5561209, at *20 (E.D.N.Y. Sept. 21,
2015), *aff'd*, 652 F. App'x 44 (2d Cir. 2016) (alterations, quotation marks, and citation omitted).

   To establish a prima facie case of retaliation, the plaintiff must show that: "(1) [s]he was
engaged in an activity protected under Title VII; (2) [her] employer was aware of [her]
participation in the protected activity; (3) the employer took adverse action against [her]; and (4)
a causal connection existed between the protected activity and the adverse action."  *Zann Kwan*,
737 F.3d at 850 (Barrington, J., concurring in part) (citing *Gordon v. New York City Bd. of
Educ.*, 232 F.3d 111, 116 (2d Cir. 2000)).  Accordingly, "for a retaliation claim to survive . . .  a
motion to dismiss, the plaintiff must plausibly allege that: (1) defendants discriminated—or took
an adverse employment action—against [her], (2) 'because' [s]he has opposed any unlawful
employment practice."  *Vega*, 801 F.3d at 90 (citation omitted).  "A plaintiff's burden at this
prima facie stage is de minimis."  *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)
(italics omitted).

   Retaliation claims under §1981, § 1983, and the NYSHRL are subject to the same
standard.  *See Goonewardena v. N.Y. Workers Comp. Bd.*, 258 F. Supp. 3d 326, 343–44
(S.D.N.Y. 2017) (treating retaliation claims under Title VII, § 1983, and the NYSHRL under the
same standard), *aff'd*, 788 F. App'x 779 (2d. Cir. 2019); *see also Vega*, 801 F.3d at 91
("Accordingly, we hold that for a retaliation claim under § 1983 to survive a . . . a motion to

dismiss, the plaintiff must plausibly allege that: (1) defendants acted under the color of state law, (2) defendants took adverse employment action against him, (3) because he complained of or otherwise opposed discrimination."); *Littlejohn*, 795 F.3d at 315 ("Retaliation claims under Title VII and § 1981 are both analyzed pursuant to Title VII principles and the *McDonnell Douglas* burden-shifting evidentiary framework." (footnote omitted)).  The Court therefore evaluates the substance of each of Plaintiff's retaliation claims—whether under Title VII, the NYSHRL, or §1981 and § 1983—congruently.

1.  Adverse Employment Action

"The Supreme Court has held that in the context of a Title VII retaliation claim, an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'"  *Vega*, 801 F.3d at 90 (quoting *Burlington*, 548 U.S. at 57); *see also Hicks v. Baines*, 593 F.3d 159, 162 (2d Cir. 2010) ("[R]etaliation is unlawful when the retaliatory acts were harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination." (citation and quotation marks omitted)).  Accordingly, "an action need not affect the terms and conditions of a plaintiff's employment for purposes of a retaliation claim." *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 n.6 (2d Cir. 2010).

Defendants argue that Plaintiff has failed to allege an adverse employment action and a causal nexus between the allegedly adverse acts and any protected activity.  (Defs.' Mem. 18–21.)  As discussed above, *supra § II.D.1.a*, the denial of summer session or per session work constitutes an adverse action.  Plaintiff additionally argues that "Gaon purposely set Plaintiff's schedule in an unreasonable manner because Plaintiff drafted the 2016 letter complaining about [] Gaon's leadership, which delayed [] Gaon's grant of tenure by a year."  (Pl.'s Mem. 16.)

51

During the 2018–2019 school year, Plaintiff alleges she was specifically told she had been
assigned an unbalanced schedule because of her 2016 letter complaining of discrimination which
delayed Gaon's tenure by a year.  (SAC ¶ 27.)  That same year, Plaintiff alleges she had to
service 26 students at one school location in two days and only 13 at another in three days which
was an unbalanced or disproportionate schedule compared with non-Black social workers.  (*Id.*
¶¶ 26–27.)   As in the discrimination context, "a disproportionately heavy workload can
constitute an adverse employment action" in the retaliation context.  *Felty v. Regeneron Pharms.,
Inc.*, No. 18-CV-5667, 2021 WL 860379, at *17 (S.D.N.Y. Mar. 8, 2021).  Accordingly, because
Plaintiff has alleged she was assigned a disproportionately heavy workload that affected her
ability to perform her responsibilities, Plaintiff has sufficiently alleged an adverse action.  *See id.*
(holding plaintiff sufficiently alleged adverse action in the retaliation context when Plaintiff's
work was significantly increased and that the increased work impeded her ability to do her job);
*Craven v. City of N.Y.*, No. 19-CV-1486, 2020 WL 2765694, at *6 (S.D.N.Y. May 28, 2020)
("[A]llegations that [plaintiff] received unequal pay and an excessive workload in retaliation for
her participation in an interview with [defendant's] equal employment office are sufficient to
state a claim.").

Plaintiff further claims that the rescinding of a grievance agreement regarding her
schedule which had been reached on October 10, 2019 constituted an adverse action.  (Pl.'s
Mem. 16.)  However, Plaintiff has not alleged that her schedule for the 2019–2020 year was
disproportionately heavy or unbalanced compared with those similarly situated.  (*See generally*
SAC.)  As discussed above, in the retaliation context as well as the discrimination context, a
Plaintiff must show an assigned workload was "disproportionately heavy" to constitute an
adverse employment action.  *Grana v. Potter*, No. 06-CV-1173, 2009 WL 425913, at *12

(E.D.N.Y. Feb. 19, 2009) (quotation marks and citation omitted); *see also Hiralall v. Sentosacare, LLC*, No. 13-CV-4437, 2016 WL 1126530, at *13 (S.D.N.Y. Mar. 18, 2016) ("[A]n increase in workload may sometimes be an adverse action for the purposes of a retaliation claim if the increase is heavily disproportionate to other employees similarly situated."). Generally, a scheduling change alone does not support a retaliation claim. *See Ziyan Shi v. N.Y. Dep't of State, Div. of Licensing Servs.*, 393 F. Supp. 3d 329, 338 (S.D.N.Y. 2019) (holding the "assignment of a challenging workload is not sufficiently adverse to support either a discrimination or a retaliation claim.") (quotation marks and citation omitted). Accordingly, the revocation of Plaintiff's schedule and assignment of a challenging workload alone does not constitute an adverse employment action. *See Petyan v. N.Y. City L. Dep't*, No. 14-CV-1434, 2015 WL 4104841, at *4 (S.D.N.Y. July 2, 2015) (holding that revocation of compressed time schedule was not an adverse action because "[s]chedule changes and close monitoring do not constitute adverse actions in the retaliation context"); *see also Ziyan Shi*, 393 F. Supp. 3d at 337–39 (holding that assigning the plaintiff a challenging workload, giving the plaintiff a counseling memorandum without adverse consequences, yelling and screaming at the plaintiff, and failing to include the plaintiff on an email to all the other investigators did not rise to the level of an adverse employment action).

Plaintiff additionally claims that Defendants retaliated against her through the denial of her accommodation requests. (Pl.'s Mem. 17.) Because denials of accommodations can constitute adverse actions in the retaliation context, Plaintiff has sufficiently alleged she suffered an adverse action in the form of her January 2022 disability accommodation request denial. *See Murray v. United Parcels Serv., Inc.*, No. 20-CV-1427, 2022 WL 4468295, at *18 (E.D.N.Y. Sept. 25, 2022) (holding denial of religious accommodations can constitute an adverse

employment act in the retaliation context because it would "likely deter a person from complaining") (collecting cases); *Peterson v. N.Y. City Dep't of Educ.*, No. 18-CV-1515, 2020 WL 2559835, at \*6 (E.D.N.Y. May 20, 2020) (holding that "having all [plaintiff's] accommodations revoked . . . rises to the level of a materially adverse action").

Next, Plaintiff states that in retaliation for filing a complaint about racial discrimination against Gaon, Gaon "embarrassed, humiliated and berated" Plaintiff in front of "nearly 50 clinicians and supervisors." (Pl.'s Mem. 16.) However, courts have repeatedly held that such behavior does not amount to an adverse employment action in a retaliation context. *See, e.g., Rakowsky v. Johnson,* No. 15-CV-169, 2017 WL 8777369, at \*5 (N.D.N.Y. Oct. 25, 2017) ("[S]ubjective feelings of anxiety or embarrassment are insufficient to constitute an adverse employment action."), *aff'd sub nom. Rakowsky v. Nielsen,* 744 F. App'x 743 (2d Cir. 2018); *E.E.O.C. v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 848 (S.D.N.Y. 2013) (holding that publicly yelling at plaintiff on the sales floor did not constitute an adverse employment action); *Miksic v. TD Ameritrade Holding Corp.*, No. 12-CV-4446, 2013 WL 1803956, at \*3 (S.D.N.Y. Mar. 7, 2013) (holding acts causing only "intangible consequences" such as anxiety are not adverse employment actions); *Hall v. N.Y. City Dep't. of Transp.*, 701 F. Supp. 2d 318, 336 (E.D.N.Y. 2010) (holding that reprimands and close monitoring may cause embarrassment or anxiety, but these intangible consequences are not materially adverse); *Martinez v. N.Y.C. Dep't of Educ.*, No. 04-CV-2728, 2008 WL 2220638, at \*12 (S.D.N.Y. May 27, 2008) ("[I]ncidents where [a supervisor] publicly yelled at [plaintiff] for various reasons or called him 'shit' . . . constitute, as a matter of law, the sorts of petty slights and personality conflicts that are not actionable."). Additionally, exclusion from meetings, failing to be included on emails, and increased scrutiny do not amount to adverse employment actions. *See Dillon v. Morano*, 497 F.3d 247, 254 (2d Cir.

54

2007) (holding exclusion from staff meetings not materially adverse); *Workneh v. Pall Corp.*, 897 F. Supp. 2d 121, 134–35 (E.D.N.Y. 2012) (holding scrutiny of plaintiff's job performance and daily schedule were not adverse employment actions); *Wallace v. N.Y. State Dep't of Corr. Servs.*, No. 02-CV-308A, 2006 WL 2134644, at *9 (W.D.N.Y. July 28, 2006) (allegations that plaintiff was "completely ostracized and excluded from important meetings and social events" not sufficient to establish adverse action) (citation omitted); *see also Cody v. Cnty. of Nassau*, 345 Fed. App'x 717, 719 (2d Cir. 2009) (summary order) (holding "(1) falsely accusing [plaintiff] of being absent without authorization, (2) threatening her with future counseling notices and disciplinary actions, (3) writing her up for leaving work early, (4) placing her on a medical review list, (5) issuing her a counseling notice while she was on leave, and (6) engaging in a pattern of conduct that created a hostile working environment" were not adverse actions for purposes of a retaliation claim).

Finally, as in the discrimination context, requiring Plaintiff to submit to a medical examination does not constitute an adverse action in the retaliation context.  *See Brady v. Dammer*, 573 F. Supp. 2d 712, 724 (N.D.N.Y. 2008) (holding that requiring a medical examination in retaliation for making a reasonable accommodation request did not constitute an adverse action); *Baum v. Rockland Cnty.*, 337 F. Supp. 2d 454, 474 (S.D.N.Y. 2004), *aff'd*, 161 F. App'x 62 (2d Cir. 2005) (holding requirement to undergo medical examination did not constitute an adverse employment action when plaintiff was not required to undergo several exams and did not lose time, pay, or benefits).

## 2.  Causation

With respect to the causation element for a claim of retaliation, "a plaintiff must plausibly plead a connection between the act and [her] engagement in protected activity."  *Vega*, 801 F.3d

at 90.  A plaintiff can demonstrate the causal connection in one of two ways: "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Gordon v. N.Y.C. Bd. of Educ.*, 232 F.3d 111, 117 (2d Cir. 2000); *see also Rodriguez v. Town of Ramapo*, 412 F. Supp. 3d 412, 443 (S.D.N.Y. 2019) (same).

Under Title VII, "for an adverse retaliatory action to be 'because' a plaintiff made a charge, the plaintiff must plausibly allege that the retaliation was a 'but-for' cause of the employer's adverse action." *Vega*, 801 F.3d at 90 (citing *Nassar*, 570 U.S. at 360).  "'But-for' causation does not, however, require proof that retaliation was the only cause of the employer's action"; instead, it requires only that absent the retaliatory motive, the adverse action would not have occurred.  *Duplan*, 888 F.3d at 625 (quoting *Vega*, 801 F.3d at 90–91); *see also Heiden v. N.Y. City Health & Hosps. Corp.*, No. 20-CV-10288, 2023 WL 171888, at *22 (S.D.N.Y. Jan. 11, 2023) (concluding that but-for causation applies to NYSHRL retaliation claims); *Torre v. Charter Commc'ns, Inc.*, 493 F. Supp. 3d 276, 288–89 (S.D.N.Y. 2020) (analyzing a motion to dismiss plaintiff's NYSHRL retaliation claim under but-for causation standard); *Smith v. N.Y. & Presbyterian Hosp.*, 440 F. Supp. 3d 303, 340 n.22 (S.D.N.Y. 2020) (collecting cases). However, "the but-for causation standard does not alter the plaintiff's ability to demonstrate causation through temporal proximity." *Vega*, 801 F.3d at 91 (alterations, quotation marks, and citation omitted).

Defendants argue that Plaintiff cannot establish causation for the unbalanced schedule because the adverse action occurred before Plaintiff's alleged protected activity.  (Defs.' Mem. 14–15.)  They cite to *Tenemille v. Town of Ramapo*, No. 18-CV-724, 2020 WL 5731964

(S.D.N.Y. Sept. 24, 2020) for this proposition, which indeed held that "because the complained-of conduct began before [p]laintiff's corresponding protected activity," the plaintiff had not satisfied the causation element of their retaliation claim. *Id.* at *13 (quotation marks and citation omitted). However, *Tenemille* and other decisions with similar holdings relate to the indirect, temporal proximity method of establishing causation, rather than the direct method of evidencing retaliatory animus. *Id.* (holding temporal proximity was not alleged because the antagonism began occurring before the protected act); *see also Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) ("The only basis [plaintiff] suggests for finding such a nexus is time. [Plaintiff] claims that his placement on probation and his subsequent firing followed his complaints closely enough to support an inference of retaliation. It is, of course, true that temporal proximity can demonstrate a causal nexus. But in this case the adverse employment actions were both part, and the ultimate product, of an extensive period of progressive discipline which began when [defendant] diminished [plaintiff]'s job responsibilities a full five months prior to his filing of the EEOC charges.") (citation and quotation marks omitted); *Dabney v. Christmas Tree Shops*, 958 F. Supp. 2d 439, 456 (S.D.N.Y. 2013) ("Although temporal proximity can sometimes demonstrate a causal nexus, where . . . the termination was ultimately the product of an extensive period of progressive discipline that began when [the] [p]laintiff received her first written warning . . . months before [the employer learned of the alleged protected activity], a claim for retaliation cannot be maintained.") (quotation marks omitted)), *aff'd sub nom. Dabney v. Bed Bath & Beyond*, 588 F. App'x 15 (2d Cir. 2014); *White v. Eastman Kodak*, No. 06-CV-6493, 2009 WL 1514659, at *10 (W.D.N.Y. May 29, 2009) ("[W]here . . . discipline was already underway prior to the protected activity . . . , the Second Circuit has held that temporal proximity alone is insufficient to make out a prima facie case."), *aff'd*, 368 F.

App'x 200 (2d Cir. 2010).  Here, Plaintiff alleges the causal connection directly—by alleging

that Gaon explicitly said she assigned Plaintiff an unbalanced caseload because of Plaintiff's

2016 letter which complained about the distribution of caseloads and disciplinary actions

targeting Black social workers which purportedly delayed Gaon's tenure.  (SAC ¶ 23.)  Because

Plaintiff has alleged that Gaon specifically attributed an adverse action—Plaintiff's unbalanced

schedule in the 2018-2019 year—to a protected activity—Plaintiff's 2016 letter complaining of

race discrimination—Plaintiff has sufficiently alleged a causal connection.  *See, e.g., Patane v.*

*Clark*, 508 F.3d 106, 116–17 (2d Cir. 2007) (holding plaintiff adequately pleaded Title VII

retaliation because she "allege[d] that she specifically overheard [defendant's employees]

conspiring to drive her out of her job and that [one employee] issued a negative performance

review that specifically complain[ed] about her attitude towards [him]," and therefore her

allegation of causal connection was "not based only—or even primarily—on temporal

proximity"); *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 383 (2d Cir. 2003) (holding direct

evidence of retaliatory animus found where termination letter stated that plaintiff was being

moved for having "branded the entire department as racists and anti-semites"); *Riisna v. Am.*

*Broad. Cos., Inc.*, 219 F. Supp. 2d 568, 571, 573 (S.D.N.Y. 2002) (holding direct evidence of

retaliatory animus where email stated that plaintiff was being removed from project because she

had filed an EEOC charge against the company).[7]

    Plaintiff additionally alleges that on December 20, 2021, she filed an "internal claim of

harassment, retaliation, and intimidation against Superintendent Hamilton, with Adrianne G.

---

[7] That the assignment of a disproportionately unbalanced workload may have also been motivated by racial discrimination does not negate but-for cause.  A but-for cause need not be the only cause of the employer's actions; in fact, an adverse employment action may have "multiple but-for causes, each one of which may be sufficient to support liability."  *Zann Kwan*, 737 F.3d at 845–46, 846 n.5.

Saunders, Board President and Ingerman Smith LLP, District Council." (SAC ¶ 58.) She alleges

that she additionally "filed an internal claim of harassment, retaliation, and intimidation" against

DePaul with Tiggs that same day. (*Id.*) Approximately one month later, on January 18, 2022,

Plaintiff submitted a request to Tiggs for ADA accommodations which was denied at the

direction of Tiggs 10 days later on January 28, 2022. (*Id.* ¶¶ 60–61.)

"There is no firm outer limit to the temporal proximity required, but most courts in the

Second Circuit have held that a lapse of time beyond two or three months will break the causal

inference." *De Figueroa v. N.Y.*, 403 F. Supp. 3d 133, 157 (E.D.N.Y. 2019) (citing *Walder v.*

*White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 503–04 (S.D.N.Y. 2010) (collecting cases)); *see*

*also Dodd v. City Univ. of N.Y.*, 489 F. Supp. 3d 219, 247 (S.D.N.Y. 2020) ("Generally, to show

causation through temporal proximity alone, courts in this Circuit require no more than two

months to have passed between a protected activity and an adverse action."). The approximately

six weeks between Plaintiff's December complaint and the January denial of her requested

accommodations is within the boundary courts in the Second Circuit have found satisfy temporal

proximity. *See e.g. Vega,* 801 F.3d at 92 (holding temporal proximity satisfied when retaliation

occurred three months after the protected activity); *Ulrich v. Soft Drink, Brewery Workers &*

*Delivery Emps., Indus. Emps., Warehousemen, Helpers & Miscellaneous Workers, Greater N.Y.*

*& Vicinity, Loc. Union No. 812*, 425 F. Supp. 3d 234, 241 (S.D.N.Y. 2019) (same for just over

two months); *Conforti v. Sunbelt Rentals, Inc.*, 201 F. Supp. 3d 278, 303–04 (E.D.N.Y. 2016)

(same for two months).

However, Plaintiff's retaliation claim predicated upon the denial of summer work does

not survive because Plaintiff claims approximately six months elapsed between her protected act,

the January 29, 2020 letter regarding her race discrimination complaint, and her denial of

summer work on approximately July 7, 2020.  (SAC ¶¶ 38, 41.)  *See Torre*, 493 F. Supp. 3d at 289 (dismissing a retaliation claim where "the alleged retaliatory conduct took place more than five months after engaging in protected activity" and the plaintiff failed to "allege any other evidence of a causal connection"); *Ray v. N.Y. State Ins. Fund*, No. 16-CV-2895, 2018 WL 3475467, at *11 (S.D.N.Y. July 18, 2018) (explaining that "a temporal gap of more than a few months will generally be insufficient to raise a plausible inference of causation without more") (collecting cases); *Wojcik v. Brandiss*, 973 F. Supp. 2d 195, 216 (E.D.N.Y. 2013) (holding a period of nearly six months between the employee's complaints about his supervisor and the incident that led to his termination was too long of a time period to support his retaliation claim); *Chukwueze v. NYCERS*, 891 F. Supp. 2d 443, 457 (S.D.N.Y. 2012) ("[T]he temporal proximity between [the plaintiff's protected activity] and the alleged adverse employment action— somewhere between three and six months—is insufficient, standing alone, to establish a causal connection.").  Additionally, because Plaintiff does not allege when she was denied per session work, instead only alleging she applied to the position on October 27, 2021, she has not alleged there was temporal proximity between a protected activity and the alleged adverse employment action.  (SAC ¶ 55.)

Accordingly, Plaintiff's §1983 and NYSHRL race retaliation claims survive.  However, because none of Plaintiff's surviving retaliation claims were exhausted under Title VII, Plaintiff's Title VII retaliation claim does not survive.  Additionally, as Plaintiff has not alleged any adverse action that resulted from a protected act related to a disability, her NYSHRL retaliation claim based on disability is dismissed.  *See Piligian v. Ichan Sch. of Med. at Mount Sinai*, No. 17-CV-01975, 2020 WL 6561663, at *12 (S.D.N.Y. Apr. 7, 2020), *report and recommendation adopted sub nom. Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp.

3d 707 (S.D.N.Y. 2020) (dismissing NYSHRL disability claim when the plaintiff did "not allege that he was retaliated against for complaining about or opposing the denial of a requested accommodation").

    F.  Hostile Work Environment Under Title VII, § 1983, and NYSHRL

       Defendants move to dismiss Plaintiff's hostile work environment claims on the basis that Plaintiff has failed to establish "sufficiently severe or pervasive conduct, or that the conduct was due to Plaintiff's protected statuses."  (Defs.' Mem. 17.)

       "A hostile work environment claim requires a showing [1] that the harassment was 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and [2] that a specific basis exists for imputing the objectionable conduct to the employer."  *Alfano*, 294 F.3d at 373 (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)); *see also Perkins v. U.S. Dep't of the Treasury*, No. 18-CV-8911, 2022 WL 19772, at *15 (S.D.N.Y. Jan. 3, 2022) (same).  This standard applies to Plaintiff's Title VII, NYSHRL, § 1981 claims brought pursuant to § 1983.  *See Lopez v. White Plains Hosp.*, No. 19-CV-6263, 2022 WL 1004188, at *15 (S.D.N.Y. Mar. 30, 2022) ("Hostile work environment claims under both Title VII and the NYSHRL are governed by the same standard.") (quotation marks and citation omitted); *Cano v. SEIU Loc. 32BJ*, No. 19-CV-8810, 2021 WL 4480274, at *5 (S.D.N.Y. Sept. 30, 2021) ("Hostile work environment claims under Title VII [and] Section 1981 . . . are judged by the same standard."); *Isbell v. City of N.Y.*, 316 F. Supp. 3d 571, 591 (S.D.N.Y. 2018) (analyzing § 1981 and § 1983 hostile environment claims under the same standard).  "At the motion to dismiss stage, . . . a plaintiff need only plead facts sufficient to support the conclusion that she was faced with harassment of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse."

*Cowan v. City of Mount Vernon*, No. 14-CV-8871, 2017 WL 1169667, at *4 (S.D.N.Y. Mar. 28, 2017) (alterations, quotation marks, and citation omitted).

A plaintiff must also plausibly allege "that the hostile work environment was caused by animus towards her as a result of [her] membership in a protected class." *Bermudez v. City of N.Y.*, 783 F. Supp. 2d 560, 573 (S.D.N.Y. 2011) (citation omitted). "[I]t is 'axiomatic that mistreatment at work, whether through subjection to a hostile environment or through other means, is actionable . . . only when it occurs because of an employee's protected characteristic,' such as race or gender." *Lloyd v. Holder*, No. 11-CV-3154, 2013 WL 6667531, at *11 (S.D.N.Y. Dec. 17, 2013) (alterations omitted) (quoting *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001)).

The Second Circuit has held that "[p]roving the existence of a hostile work environment involves showing both objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Feingold*, 366 F.3d at 150 (quotation marks and citation omitted). In determining whether a plaintiff has plausibly alleged an actionable hostile environment, courts must look at the "totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Littlejohn*, 795 F.3d at 321 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). "[I]ncidents must be more than 'episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive.'" *Alfano*, 294 F.3d at 374 (quoting *Perry*, 115 F.3d at 149). "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Id* (citation omitted). "Hostile work environment claims

are meant to protect individuals from abuse and trauma that is severe.  They are not intended to promote or enforce civility, gentility or even decency." *Isbell*, 316 F. Supp. 3d at 591 (quotation marks and citation omitted).  "[E]xcessive criticism and rudeness do not constitute a hostile work environment[.]" *Ramirez v. Temin & Co*., No. 20-CV-6258, 2021 WL 4392303, at *8 (S.D.N.Y. Sept. 24, 2021).

"[A]llegations of a heavier workload alone can[ ] support a viable hostile work environment claim" if the "plaintiff was subjected to 'disproportionately burdensome work assignments.'" *Wilson v. Family Dollar Stores of N.Y., Inc*., No. 06-CV-639, 2008 WL 4426957, at *8 (E.D.N.Y. Sept. 25, 2008) (quoting *Garone v. UPS*, 436 F. Supp. 2d 448, 467 (E.D.N.Y. 2006)), *aff'd*, 374 F. App'x 156 (2d Cir. 2010).  "A reasonable employee could find that the assignment of a disproportionate workload altered her employment conditions for the worse." *Sanderson v. Leg Apparel LLC*, No. 19-CV-8423, 2020 WL 3100256, at *8 (S.D.N.Y. June 11, 2020) (quotation marks and citation omitted).  Additionally, "[i]mproper, unfair, or false discipline can contribute to a hostile work environment" so long as "the disciplinary action was connected to Plaintiff's protected characteristics." *Buczakowski v. Crouse Health Hosp., Inc.*, No. 18-CV-330, 2022 WL 356698, at *11 (N.D.N.Y. Feb. 7, 2022).

Plaintiff alleges she was assigned a disproportionate workload in the 2018–2019 school year and was subject to unfair discipline in the 2019–2020, both on account of her race.  (SAC ¶¶ 25–27, 31.)  Accordingly, she has sufficiently alleged a hostile work environment.  *See Cherry v. N.Y. City Hous. Auth*., 564 F. Supp. 3d 140, 184 (E.D.N.Y. 2021) (holding triable issue of fact existed as to hostile work environment when plaintiff testified that defendant assigned him a disproportionately heavy workload and required plaintiff to work overtime hours while denying overtime compensation because he was a man); *Sanderson*, 2020 WL 3100256, at *8 (holding

plaintiff's allegations sufficiently pled that he was subjected to objectively severe or pervasive conduct because "[m]ost importantly [plaintiff] has alleged that he was assigned a disproportionate workload because of his race"); *Pothen v. Stony Brook Univ.*, 211 F. Supp. 3d 486, 499 (E.D.N.Y. 2016) (holding that allegations that defendants "made life miserable for [the plaintiff], ridiculed him, overloaded him with work, and caused him psychological trauma . . . could plausibly be sufficiently pervasive or severe to constitute a hostile work environment"); *Anderson v. Nassau Cnty. Dep't of Corr.*, 558 F. Supp. 2d 283, 295–96 (E.D.N.Y. 2008) (denying summary judgment on hostile-work-environment claim based on improper discipline, discriminatory statements, disparate treatment, and failure to promote); *cf. Buczakowski*, 2022 WL 356698, at *12 (holding no hostile work environment because while "plaintiff alleges her discipline was not fair, she has not shown that unfair discipline was connected to her age or disability").[8]

Because acts contributing to Plaintiff's hostile work environment claim took place within the Title VII statutory period, namely the disparate discipline Plaintiff was subject to during the 2019-2020 school year, her Title VII claim survives.

Plaintiff, however, has failed to allege a hostile work environment based on her disability status under NYSHRL. The denial of her accommodation request, the required medical exam, and any harassment Plaintiff experienced while on leave do not constitute a hostile work environment. *See Kugel v. Queens Nassau Nursing Home Inc.*, 568 F. Supp. 3d 253, 263 (E.D.N.Y. 2021) (holding that while "defendants may have been rude or ill-mannered in refusing her accommodation, [plaintiff] fails to show how such refusals amounted to acts of intimidation,

---

[8] Defendants do not argue that the conduct creating a hostile work environment cannot be imputed to the employer or that Plaintiff did not subjectively perceive the work environment to be abusive. (*See generally* Defs.' Mem.)

ridicule, or insult required under NYSHRL"); *Rubin v. Abbott Laboratories*, No. 13-CV-8667, 2015 WL 5679644, at *8 (S.D.N.Y. September 23, 2015) (dismissing a hostile work claim where the "plaintiff was on leave when [the incident] occurred; she was not even in the workplace"); *Krachenfels v. N. Shore Long Island Jewish Health Sys.*, No. 13-CV-243, 2014 WL 3867560, at *10 (E.D.N.Y. July 29, 2014) (holding that conduct that occurred while the plaintiff "was on leave, has no bearing on plaintiff's hostile work environment claim, which requires evidence of harassment in the 'workplace'"); *Gillman v. Inner City Broad. Corp.*, No. 08-CV-8909, 2011 WL 181732, at *1 (S.D.N.Y. January 18, 2011) (holding that since the plaintiff was on leave, "there is no dispute that the alleged incidents did not take place in the 'workplace,' [the plaintiff] cannot make out a hostile work environment case"); *Krinsky v. Abrams*, No. 01-CV-5052, 2007 WL 1541369, at *10 (E.D.N.Y. May 25, 2007), *aff'd*, 305 F. App'x 784 (2d Cir. 2009) (holding that requiring a psychological evaluation, negative evaluations, limited access to the supply room and denial of attendance at conferences did not constitute a hostile work environment).

### G. FMLA Claims

#### 1. FMLA Interference

To establish a claim of FMLA interference, a plaintiff must establish that: (1) "[she] is an eligible employee under the FMLA"; (2) the defendant is "an employer as defined by the FMLA"; (3) the plaintiff "was entitled to take leave under the FMLA;" (4) the plaintiff gave the employer notice of his or her intention to take leave; and (5) the plaintiff "was denied benefits to which [she] was entitled under the FMLA." *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016); *see also Patel v. NYU Langone Hosps.*, No. 20-112, 2021 WL 4852426, at *3 (2d Cir. Oct. 19, 2021) (summary order) (applying the same five-factor test).

Plaintiff claims that "Defendants interfered with and wrongfully denied [Plaintiff] her FMLA protected rights in March 2021." (Pl.'s Mem. 22; SAC ¶ 89 ("[Defendants] interfered with Plaintiff's FMLA rights by wrongfully denying her FMLA request in March 2021").) Defendants argue that Plaintiff fails to plausibly allege she was eligible under the FMLA. (Defs.' Mem. 23.) An "eligible employee" under the FMLA refers to "an employee who has been employed . . . for at least 12 months by the employer" and "for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A)(i)–(ii). "The determination of whether an employee . . . [is eligible] must be made as of the date the FMLA leave is to start." 29 C.F.R. § 825.110(d). Eligibility is a threshold issue, and it is insufficient for Plaintiff to "merely assert in a conclusory manner that [s]he is eligible without stating any facts that relate to the definition of an eligible employee." *Smith v. Westchester Cnty.*, 769 F. Supp. 2d 448, 465 (S.D.N.Y. 2011) (alterations, quotation marks, and citation omitted). Even alleging that the employee was "employed full-time . . . is not enough to establish the 1,250 hours prong of the test." *Simmons v. N.Y.C. Transit Auth.*, No. 96-CV-3414, 2001 WL 984905, at *2 (E.D.N.Y. July 6, 2001) (quotation marks and citation omitted).

It is unclear from the Second Amended Complaint how many hours Plaintiff worked in the 12 months before her FMLA request was denied in March 2021, as Plaintiff does not make any factual assertions regarding how many hours she worked in the 12 months preceding or her caseload in the 2020-2021 school year. (*See generally* SAC.) While Plaintiff worked five days a week during the 2019-2020 school year, it appears Plaintiff did not work over the summer of 2020. "[T]o the extent that plaintiff has failed to assert that [she] worked the requisite number of hours to qualify for FMLA leave, [plaintiff] has failed to meet the pleading requirements for FMLA eligibility." *Bakeer v. Nippon Cargo Airlines, Co., Ltd.*, Nos. 09-CV-3374, 09-CV-3377,

09-CV-3378, 2011 WL 3625103, at *40 (E.D.N.Y. July 25, 2011), *report and recommendation adopted*, No. 09-CV-3374, 2011 WL 3625083 (E.D.N.Y. Aug. 12, 2011), *and report and recommendation adopted sub nom. Michaud v. Nippon Cargo Airlines, Co., Ltd.*, No. 09-CV-3375, 2011 WL 5402642 (E.D.N.Y. Nov. 7, 2011), *and report and recommendation adopted sub nom. Frith v. Nippon Cargo Airlines, Co., Ltd.*, No. 09-CV-3378, 2011 WL 5429642 (E.D.N.Y. Nov. 7, 2011). Plaintiff argues that the fact that Defendants ultimately granted Plaintiff's FMLA leave proves she was entitled to that leave. (Pl.'s Mem. 22.) However, that Plaintiff may have been entitled to FMLA leave in April does not demonstrate that she was eligible in March and that the March denial was therefore wrongful. Accordingly, because Plaintiff has not established she was eligible for FMLA leave in March 2021, the Court dismisses Plaintiff's FMLA interference claim that is predicated upon the March denial. *Diby v. Kepco Inc.*, No. 16-CV-583, 2016 WL 5879595, at *3 (E.D.N.Y. Oct. 7, 2016) (dismissing FMLA claim because "although plaintiff alleges that she was employed by Kepco for more than twelve months before requesting leave . . . she has not alleged that she worked at least 1,250 hours in the twelve months before she filed for FMLA leave"); *Ingrassia v. Cnty. of Sullivan*, 262 F. Supp. 2d 116, 120 (S.D.N.Y. 2003) (granting the defendant's motion to dismiss because the plaintiff failed to specify that she worked the necessary hours in the correct time period, but allowing the plaintiff to amend to cure the deficiency); *see also Roff v. Low Surgical & Med. Supply, Inc.*, No. 03-CV-3655, 2004 WL 5544995, at *8 (E.D.N.Y. May 11, 2004) (holding that "[a]lthough the factual allegations contained in plaintiff's complaint suggest that she was a full time employee of defendant since September 2000, they are insufficient to establish that she actually performed at least 1,250 hours of service during the twelve month period immediately preceding her requested leave, as

required by FMLA.  Accordingly, plaintiff's complaint fails to establish that she was an 'eligible employee' within the meaning of FMLA").

### 2.  FMLA Retaliation

FMLA retaliation claims are analyzed under the three-step burden-shifting analysis set forth in *McDonnell Douglas*.  *See Potenza v. City of N.Y.*, 365 F.3d 165, 168 (2d Cir. 2004).  "To establish a prima facie case of FMLA retaliation, a plaintiff must establish that 1) [s]he exercised rights protected under the FMLA; 2) [s]he was qualified for [her] position; 3) [s]he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent."  *Graziadio*, 817 F.3d at 429 (alteration, quotation marks, and citation omitted).  For the purposes of FMLA retaliation claims, an "adverse employment action" is "any action by the employer that is likely to dissuade a reasonable worker in the plaintiff's position from exercising [her] legal rights."  *Millea v. Metro-North R. Co.*, 658 F.3d 154, 164 (2d Cir. 2011) (quotation marks omitted).  "Petty slights, minor annoyances, and simple lack of good manners will not give rise to actionable retaliation claims."  *Id*. at 165 (alteration, quotation marks, and citation omitted).  However, where a plaintiff alleges multiple adverse acts, "the alleged acts of retaliation need to be considered both separately and in the aggregate, as even minor acts of retaliation can be sufficiently substantial in gross as to be actionable."  *Smith v. N. Shore-Long Island Jewish Health Sys.*, 286 F. Supp. 3d 501, 512 (E.D.N.Y. 2018) (citing *Hicks*, 593 F.3d at 165).  "[T]he standard for an adverse employment action in retaliation claims is considerably broader than the standard for discrimination claims."  *Vaughn v. City of N.Y.*, No. 06-CV-6547, 2010 WL 2076926, at *14 (E.D.N.Y. May 24, 2010).

But-for causation is not required under the FMLA.  *See Woods v. START Treatment & Recovery Centers, Inc.*, 864 F.3d 158, 169 (2d Cir. 2017) (holding that a jury instruction of "but-

for" causation for FMLA retaliation is erroneous).  An inference of retaliatory intent in the FMLA context can be shown when a "causal connection exists between the plaintiff's protected activity and the adverse action taken by the employer," which can manifest from "very close" temporal proximity between the protected activity and adverse action.  *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 152 (2d Cir. 2012) (quotation marks and citation omitted).

Defendants argue that Plaintiff cannot establish FMLA retaliation because (1) she has not plausibly alleged that she was an eligible employee or entitled to take leave under the FMLA, (2) she suffered no adverse employment action, and (3) she failed to show any causal nexus between her leave and any adverse action.  (Defs.' Mem. 23–24.)  Plaintiff argues she has pled an FMLA retaliation claim because she was required to undergo a medical examination after requesting leave and was subject to "continued harassment and retaliation" during her time on leave and ultimately "made a police report" because Defendants were "constantly bothering her by coming onto her property, knocking on her door, leaving letters in her mailbox, driving up and down the street in front of her home, [and] pacing up and down her driveway."  (Pl.'s Mem. 23.)

In order for a plaintiff to "exercise rights protected under the FMLA," the plaintiff must demonstrate she actually has a valid claim to FMLA benefits.  *Milne v. Navigant Consulting*, No. 08-CV-8964, 2010 WL 4456853, at *10 n.19 (S.D.N.Y. Oct. 27, 2010) (quotation marks omitted).  "Thus, in order to make out a retaliation claim it is not enough to simply submit a request for FMLA leave; the plaintiff must demonstrate she actually had a right to such leave."  *Arizmendi v. Rich Prod. Corp.*, No. 21-CV-371, 2022 WL 4119127, at *9 (D. Conn. Aug. 10, 2022).  As discussed above, *supra § II.G.1,* Plaintiff has not sufficiently alleged she had a valid FMLA request when she submitted the request for leave in March 2021.  Accordingly, the

medical examination Plaintiff was directed to undertake as a result of her leave request cannot constitute a retaliatory action.

Courts have held that when a plaintiff is granted leave under the FMLA, that plaintiff has exercised rights protected under the FMLA. *See Potenza*, 365 F.3d at 168 (holding plaintiff "exercised rights protected under the FMLA" because plaintiff's "leave was taken in accordance with the FMLA"); *Carla Ottley-Cousin v. MMC Holdings, Inc.*, No. 16-CV-577, 2019 WL 1994488, at *17 (E.D.N.Y. May 6, 2019) (holding that a plaintiff "exercised rights protected under the FMLA when she requested and was granted leave").  So too here, Plaintiff alleges she was granted FMLA leave, and therefore has plausibly alleged she exercised rights protected under the FMLA.

The FMLA's protection against retaliation "encompasses the employer's conduct both during and after the employee's FMLA leave." *Ottley-Cousin*, 2019 WL 1994488, at *17 (quoting *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768–69 (5th Cir. 2001)). Accordingly, this Court must determine whether Defendants' behavior while Plaintiff was on leave, namely "coming onto her property, knocking on her door, leaving letters in her mailbox, driving up and down the street in front of her home, [and] pacing up and down her driveway" constitute adverse actions.  (Pl.'s Mem. 23.)  Because such actions could dissuade a reasonable worker from exercising her FMLA rights, Plaintiff has sufficiently stated a claim for FMLA retaliation. *See Basak v. N.Y. State Dep't of Health*, 9 F. Supp. 3d 383, 392 (S.D.N.Y. 2014) (holding harassing phone calls to plaintiff at his home, falsely accusing him of various misdeeds, were sufficiently intimidating as to cause a reasonable employee to hesitate or desist from filing future complaints of discrimination); *Zahler v. Empire Merchants, LLC*, No. 11-CV-3163, 2012 WL 273698, at *9 (E.D.N.Y. Jan. 31, 2012) (holding a reasonable worker in plaintiff's position

"would be dissuaded from exercising her FMLA rights for fear of receiving a harassing and threatening phone call demanding that she complete work product while on leave or face a sanction jeopardizing her job stability").  Accordingly, Plaintiff has not stated a claim for FMLA retaliation.

### H.  Personal Involvement

"[C]laims under 42 U.S.C. § 1983 [require] a showing of personal involvement by the defendant . . . for liability under § 1981."  *Sherman v. Yonkers Pub. Schs.*, No. 21-CV-7317, 2023 WL 137775, at *5 (S.D.N.Y. Jan. 9, 2023) (citing *Patterson*, 375 F.3d at 229); *Mallison v. Conn. Off. of Early Childhood*, No. 21-CV-1641, 2022 WL 6771028, at *8 (D. Conn. Oct. 11, 2022) ("Importantly, under § 1981 and § 1983, an individual may not be held liable merely because he held a high position of authority, or on a theory of vicarious liability, but can be liable only if he was personally involved in the alleged deprivation.") (quotation marks and citation omitted).  "Under the NYSHRL . . . , individual liability similarly requires personal involvement of a defendant."  *Doran v. Ives*, No. 15-CV-7217, 2021 WL 1614368, at *5 (S.D.N.Y. Apr. 26, 2021) (citing *Feingold*, 366 F.3d at 157–58)).

The only Defendants Plaintiff has alleged were personally involved in the surviving claims—discrimination claims stemming from the unbalanced schedules, retaliation claims stemming from the unbalanced schedules and the accommodation requested denial, and hostile work environment claims stemming from unbalanced schedules and unfair discipline—are Gaon and Tiggs.  (SAC ¶¶ 27, 44, 61.)[9]

---

[9] While Plaintiff has alleged that Bennett sent Plaintiff a threatening disciplinary letter of counsel for not completing a schedule on May 12, 2020, Plaintiff has not alleged that this discipline was unwarranted, unfair, or discriminatory.

Because Plaintiff has not alleged the involvement of Burnett, DePaul, Sperling, or Hamilton, claims against them must be dismissed. *Littlejohn*, 795 F.3d at 314 (dismissing claims under §§ 1981 and 1983 where plaintiff had not alleged that supervisor was personally involved in the allegedly discriminatory actions that took place); *Quinones v. City of Binghampton*, No. 19-CV-1460, 2022 WL 43764, at *5 (N.D.N.Y. Jan. 5, 2022) (holding that the allegation that the defendant "failed to take any ameliorative action after receiving notice of pervasive racism" was insufficient to demonstrate personal involvement (quotation marks omitted)); *Mallison*, 2022 WL 6771028, at *9 (dismissing claims under §§ 1981 and 1983 where plaintiff did not allege defendant was personally involved in any decision); *Fellah v. City Univ. of N.Y.*, No. 20-CV-6423, 2022 WL 4619902, at *6 (S.D.N.Y. Sept. 30, 2022) (holding plaintiff failed to pleaded personal involvement in a hostile work environment because at most his allegations establish that defendant failed to take sufficient action to remedy plaintiff's work situation, and because they fail to allege that she did anything to actively create a hostile work environment for plaintiff); *Peck v. Cnty. of Onondaga, N.Y.*, No. 21-CV-651, 2021 WL 3710546, at *10 (N.D.N.Y. Aug. 20, 2021) (holding that the failure to remedy discriminatory conduct by others is insufficient to constitute personal involvement following *Tangreti*); *Miranda v. S. Country Cent. Sch. Dist.*, 461 F. Supp. 3d 17, 26 (E.D.N.Y. 2020) (holding that defendants could not be held liable merely because they held positions of authority when plaintiff did not allege any facts as to the individual defendants' personal involvement in plaintiff's termination).

### I.  Municipal Liability

When courts construe § 1981 claims as brought under § 1983, plaintiffs must plausibly allege that the "challenged acts were performed pursuant to a municipal policy or custom, as required to maintain a § 1983 action against a municipality." *Duplan*, 888 F.3d at 621 (quotation

marks and citation omitted); *Patterson*, 375 F.3d at 226 ("[W]hen the defendant sued for discrimination under § 1981 or § 1983 is a municipality—or an individual sued in his official capacity . . . the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom.") (citations omitted).

Defendants did not respond to the substance of Plaintiff's argument that her § 1981 claim should be construed as brought under § 1983 and that the "challenged acts were in fact performed pursuant to municipal policy and custom." (Pl.'s Mem. 18–20; Defs.' Reply Mem. 8–9.) Defendants simply state incorrectly that Plaintiff "mistakenly conflates the § 1981 standard with that of a § 1983 *Monell* claim." (Defs.' Reply Mem. 9.) Accordingly, this Court does not construe Defendants as moving to dismiss claims against the municipality on the basis that Plaintiff has failed to allege that the challenged acts were performed pursuant to policy or custom.

### III.  Conclusion

For the foregoing reasons, Defendants' Motion is denied in part and granted in part. Defendants' Motion is granted with regard to Plaintiff's ADA, Title VII discrimination and retaliation, NYSHRL disability, and FMLA interference claims. Defendants' Motion is denied with regard to Plaintiff's §1981 claims brought under §1983 and Plaintiff's FMLA retaliation, Title VII hostile work environment, and race-based NYSHRL claims. Plaintiff's ADA, NYSHRL disability, and Title VII discrimination and retaliation claims are dismissed without prejudice. However, this Court's Individual Practice Rules state "[i]f a complaint is ultimately dismissed on the grounds set forth in the movant's initial letter, it may be dismissed ***with prejudice*** as the nonmovant already had a chance to research the movant's arguments and amend as needed." Individual Rules of Practice of the Honorable Kenneth M. Karas (May 20, 2020),

https://www.nysd.uscourts.gov/sites/default/files/practice_documents/KMK%20Individual%20Practices%202-5-2020%20update.pdf.  Defendants sent Plaintiff a pre-motion letter on June 3, 2022 that addressed the relevant deficiencies in Plaintiff's FMLA interference claim and Plaintiff chose to oppose the Motion rather than amend.  (Dkt. No. 60.)  Accordingly, Plaintiff's FMLA interference claim is dismissed with prejudice.  *See Jones v. Cuomo*, 542 F. Supp. 3d 207, 226 (S.D.N.Y. 2021) (granting a motion to dismiss with prejudice because "[the] [p]laintiff has previously amended his complaint, but his [a]mended [c]omplaint fails to state a claim on which relief can be granted. Moreover, [the] [p]laintiff was put on notice of the deficiencies in his [a]mended [c]omplaint by [the] [d]efendants' September 14, 2020 letter previewing their anticipated motion to dismiss, but instead opted to oppose the motion rather than to seek leave to amend" (citations omitted)).  If Plaintiff wishes to file a third amended complaint alleging additional facts and otherwise addressing the comparator deficiencies identified above, Plaintiff must do so within 30 days of the date of this Opinion & Order.  Plaintiff is further advised that the third amended complaint will completely replace, not supplement, the instant Complaint. The third amended complaint must therefore contain all of the claims, defendants, and factual allegations that Plaintiff wishes the Court to consider.  If Plaintiff fails to timely file a third amended complaint, the claims may be dismissed with prejudice.

The Court will hold a conference in this case on May 3, 2023, at 12:00 P.M.  The Clerk of Court is respectfully directed to terminate the pending Motion.  (Dkt. No. 69.)

SO ORDERED.

Dated:   March 29, 2023
         White Plains, New York

_____
            KENNETH M. KARAS
          United States District Judge

74